STATE OF NEBRASKA, APPELLEE, V. PAUL BLUNT, APPELLANT.
193 N. W. 2d 434

Filed January 7, 1972. No. 37933.

Frank B. Morrison, Bennett G. Hornstein, and Paul Blunt, for appellant.

Clarence A. H. Meyer, Attorney General, and Betsy G. Berger, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

NEWTON, J.

This is an appeal from a conviction for robbery. The evidence reveals that on May 28, 1970, a cleaning establishment of Max I. Walker, Inc., was entered at about

(631)

12:20 p.m. by a person identified by two witnesses as the defendant. Defendant first entered and asked for clothes. There were none in the name given. He left and returned a few minutes later. On this occasion he entered the rear room and created a disturbance with the lady who did the pressing. The mailcarrier entered the shop and asked defendant to leave after threatening to call the police. Defendant went out with the mailcarrier but returned and the mailcarrier crossed the street. He saw defendant leave carrying something which he dropped and picked up, and then he ran down the street. In the meantime, the women in the shop were screaming. When defendant returned the third time, the lady acting as the counterclerk had waited on a customer and left the cashdrawer open. Defendant put in his hand to remove the money and she shut the drawer on his hand. He pushed her away with sufficient force that she fell and lacerated her knees. He then jerked the cashtray out on the floor, removed the money, and fled. He was apprehended about 5 minutes later approximately 2 blocks from the shop. When he saw the police officer, he attempted to flee, then surrendered. He then had a scraped area on the back of his left hand and was possessed of $111.37, a $17.16 check, and a claim check on the Walker cleaning establishment in the name of another individual. The manager testified $169.26 was missing.

We find the record sustains the conviction and that the judgment of the district court should be affirmed.

Defendant asserts the evidence is insufficient in that the use of force was not proved. An essential element of the crime of robbery is that the theft be accomplished by the use of force, violence, or intimidation. See § 28-414, R. R. S. 1943. Force relied upon must be sufficient to effect a transfer of the property from the victim to the robber and if it is sufficient to overcome resistance, the degree is immaterial. See, Williams v. State, 51 Neb. 711, 71 N. W. 729; Cooper v. State, 9 Md.

App. 478, 265 A. 2d 569; People v. Williams, 23 Ill. 2d 295, 178 N. E. 2d 372.

Defendant further contends that the sentence of not less than 24 years 6 months, nor more than 35 years, is excessive. The sentence is a severe one and it would have been helpful had the court, by means of questioning the defendant at the time sentence was pronounced or by other means, made defendant's background and past conduct a part of the record. The present record contains only an indication that defendant had been at least twice previously convicted of felonies. On this record we are not in position to judge whether or not the trial court abused its discretion. Where the punishment of an offense created by statute is left to the discretion of the trial court within prescribed limits, a sentence imposed within those limits will not be disturbed on appeal unless there appears to be an abuse of discretion. See State v. Agostine, 184 Neb. 158, 165 N. W. 2d 353.

Another assignment of error is that contradictions in the evidence adduced required a directed verdict of acquittal. It is well established that matters of credibility are for the jury. Defendant also insists he was deprived of a chance to prepare his defense and that the record of the preliminary hearing was suppressed. These contentions are not supported by the record and are without merit.

No error appearing, the judgment of the district court is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

The defendant here was convicted of robbery. He took a little over $100 in cash and checks from the cash register and shoved or knocked the cashier to her knees when she shut the cash register drawer on his fingers. There is no evidence that he displayed or used a weapon.

Following the adoption of the majority opinion, the court directed that the presentence investigation re-

ports be forwarded, and they have now been examined. The defendant is a black male born February 14, 1936, a native of Kansas City, Missouri. His felony criminal record begins in 1955 when he pleaded guilty to a charge of burglary and was sentenced to 2 years in the Missouri State Reformatory. In 1957, he was convicted of robbery, first degree, and sentenced to 5 years in the Missouri State Penitentiary. He was discharged in April of 1960 and apparently moved to Omaha, Nebraska, in June of 1960. In 1961, he was convicted of armed robbery in Douglas County, Nebraska, and sentenced to 7 years in the penitentiary. This was an armed robbery with a shotgun in which he took over $60 in cash from a service station attendant and also stole the attendant's gun. In October 1966, he was convicted of burglary, again in Douglas County, Nebraska, and sentenced to 6 years in the Nebraska Penal and Correctional Complex. He was paroled June 18, 1969, and was convicted of the robbery in this case on November 4, 1970. In this case, the sentence was solely on a robbery count. An habitual criminal charge was dismissed after the conviction on the robbery count and prior to the sentence here. The sentence was for a minimum term of 24 years 6 months to a maximum term of 35 years.

Section 29-2308, R. R. S. 1943, authorizes this court to reduce the sentence against an accused if it is excessive and enjoins on us the duty to render such sentence against the accused as, in our opinion, may be warranted by the evidence. Comparatively recently we have often repeated the holding that a sentence imposed by the trial court within the prescribed statutory limits will not be disturbed on appeal unless there appears to be an abuse of discretion. That rule is repeated in the majority opinion here.

If the facts here do not warrant the intervention of this court in reducing the sentence, it is quite clear that the intended scope of section 29-2308, R. R. S. 1943, is being drastically restricted. While it may be true that

this court will add considerably to its burden by undertaking to consider excessiveness of sentences, and the inherent difficulties in attempting to achieve any sort of uniformity are obvious, nevertheless, the demands of justice require at least a reasonable effort to deal with the problem of excessive sentences.

Admittedly, the defendant's record is bad. He is clearly not entitled to any leniency whatever. Nevertheless, he ought to be entitled to even-handed justice. It seems clear that the sentence given is excessive under the circumstances. The evidence here warrants a sentence of 10 years at most. Any sentence in excess of that amount constituted an abuse of discretion.

SMITH, J., concurring.

I concur with the majority opinion, but no one should dismiss the dissenting opinion by McCown, J., lightly. My difference with him lies in a view of Nebraska practice and an intuitive reification of statutory sentencing structures, social defense, deterrence, punishment, and rehabilitation. See § 29-2260, R. S. Supp., 1971.

The sentencing judge ordinarily has been acting on a presentence report without advice from behavioral scientists. Scientific investigation occurs at the Diagnostic Center of the Division of Corrections upon admission of the prisoner. The sentencing judge may defer action to obtain a report from the Center or to order a psychiatric examination. A committed offender is eligible for parole prior to expiration of the minimum term whenever the minimum sentence provided by law, less certain reductions, has been served and the judge approves parole of the offender. See, §§ 83-1,105 and 83-1,110, R. S. Supp., 1969; § 29-2261, R. S. Supp., 1971.

When we review a sentence allegedly excessive, from necessity we ordinarily act without expertise. Prior convictions then loom out of a penal policy that grotesquely appears to subscribe to a rigorous sentence for a recidivist. In this case, however, Blunt surely needs treatment to reintegrate himself into society. He is now

a dangerous offender, a substantial threat. If treatment proves unsuccessful, his lengthy separation from society is justifiable.

The law is deeply indebted to the behavioral sciences which have ameliorated penal policy, but much remains to be done. My difference with McCown, J., is one of timing. The insight of Justice Cardozo more than 40 years ago retains vitality today:

"We have put away the blood feud, the vendetta, the other forms of private war, but in the framing of our penal codes we have not forgotten the passions that had their outlet and release in pursuit and retribution. I do not say that it is wise to forget them altogether. The thirst for vengeance is a very real, even if it be a hideous, thing; and states may not ignore it till humanity has been raised to greater heights than any that has yet been scaled in all the long ages of struggle and ascent. . . .

". . . the present system, in the view of many, is as irrational in its mercies as in its rigors, and in its rigors as in its mercies. . . .

". . . I have faith . . . that a century or less from now, our descendants will look back upon the penal system of today with the same surprise and horror that fill our own minds when we are told that only about a century ago one hundred and sixty crimes were visited under English law with the punishment of death, and that in 1801 a child of thirteen was hanged at Tyburn for the larceny of a spoon. Dark chapters are these in the history of law. We think of them with a shudder, and say to ourselves that we have risen to heights of mercy and of reason far removed from such enormities. The future may judge us less leniently than we choose to judge ourselves. . . .

"The law, like medicine, has its record of blunders and blindness and superstitions and even cruelties. Like medicine, however, it has never lacked the impulse of a great hope, the vision of a great ideal. . . .

"... ,Not all her ministers have been true to the ideal which she has held aloft for them to follow. But ... the word has been proclaimed, to steady us when we seem to falter, to strengthen us when we seem to weaken, to tell us that with all the failings and backslidings, with all the fears and all the prejudice, the spirit is still pure." M. Hall, Selected Writings of Benjamin Nathan Cardozo, 378 to 393 (1947). See, generally, Ancel, Social Defence, 215 to 221 (1965); Inbau and Carrington, "The Case of the So-Called 'Hard Line' Approach to Crime," 397 Annals of Am. Ac. Pol. and Soc. Sc., 19 (1971); Skoler, "There's More to Crime Control Than the 'Get Tough' Approach," 397 Annals of Am. Ac. Pol. and Soc. Sc., 28 (1971).