STATE OF NEBRASKA, APPELLEE, V. ALLEN REED, JR., APPELLANT.

195 N. W. 2d 503

Filed March 17, 1972. No. 38242.

Marer & Lazer and Michael L. Lazer, for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

The defendant was convicted by a jury on the charge of carrying a concealed weapon, a revolver or pistol, and was sentenced to a term of 2 years. On this appeal three claims are made: (1) The trial court erred in not suppressing the eyewitness identification testimony of certain witnesses because their in-court identifications were not independent of and were tainted by unduly suggestive photographic and lineup identifications; (2) the evidence is insufficient to support the verdict because it did not establish that the defendant "concealed on or about his person a certain revolver or pistol" which was a "dangerous weapon"; and (3) the defendant was deprived of his right to counsel at the time of sentencing, thus being unconstitutionally deprived of counsel at a critical stage of the proceeding.

We find the assignments are not well taken and affirm the conviction and sentence.

The trial court held a Wade-Gilbert-Stoval hearing prior to trial and at the conclusion thereof found the in-court identification had not been tainted by pretrial occurrences and was admissible. The complaints concerning pretrial identification are these: (1) Before lineup a police officer called one of the witnesses and told him he "had the fellow and . . . wanted them to come and

view him for identification"; (2) the defendant appeared alone at the pretrial identification; and (3) one of the witnesses had before the identification by chance seen a photograph of the defendant on a police officer's desk.

The record of the hearing and of course the trial itself are before us. From the evidence presented the court and jury could have found as follows: On the day of the offense a black man wearing a beard and mustache was observed by witnesses, employees of a grocery store where the incident occurred, concealing three cartons of cigarettes in his clothing. He was accosted by the witnesses and asked to come to the rear of the store and as he was apparently complying with the request he removed the cartons from his clothes and disposed of them in a grocery cart. After this he pulled from his clothing a pistol or revolver. A struggle ensued and the gun discharged apparently while pointed upward. The man then broke loose and ran from the store. As he did so he passed by an acquaintance who had previously worked with him. This acquaintance, a witness in the case, had also seen him during the struggle and immediately before it. This witness also observed the gun at the man's side as he ran from the store. The acquaintance immediately identified the man to the store employees. Later the same day the witness identified the defendant by photograph and as a result the defendant was taken into custody the next day since as a result of the identification by the acquaintance the police knew by name for whom they were looking. At the trial the acquaintance identified the defendant in court. On the afternoon of the incident the two store employees picked the defendant's photograph out of a group submitted to them and a day later identified him at the police station, at which time the defendant was clean shaven. Each witness identified him immediately and positively. One of the witnesses, who had anticipated that he would be

shown more than one man, stated immediately upon seeing the defendant that he was the man and that it was not necessary to show anyone else. The reason for the one man lineup was that there were no other black men available at the time. The defendant acknowledged at trial that he had shaved his beard and mustache on the evening of the date of the offense charged.

On the above record it clearly appears that the pre-trial identification procedures were not so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. State v. Moss, 187 Neb. 391, 191 N. W. 2d 543. The record also is clearly sufficient to support a finding of guilt of the offense charged.

In order to properly consider the third assignment a statement of what occurred at sentencing is required. When brought before the court for sentencing on May 21, 1971, the defendant expressed dissatisfaction with the services of the public defender who had represented him at trial. Before the court he claimed in general terms a lack of investigation, prejudicial argument to the jury, and failure of counsel to argue that there was no proof the gun was a real gun. This last item was also the principal issue raised at a later hearing which we refer to and was coupled with a claim that his counsel should have taken pictures to show that there were no holes made by the discharge of a bullet. Because these last arguments are at least logically inconsistent with the defendant's defense of alibi and misidentification it can be seen that tactically it would have been unwise for counsel to assert or argue them.

The defendant had prior to May 21, 1971, indicated to the court that he did not wish to file a motion for new trial. At the hearing on May 21, 1971, he indicated he did and the court continued the matter to June 24, 1971. At that time the defendant orally and in writing "fired" the public defender as his counsel. The court then asked him if he was going to proceed on his own. The court

suggested to him he not proceed on his own and suggested he keep the public defender but "if you wish to discharge them, I am willing to allow you to do this." The following colloquy then occurred: "MR. REED: If he is brought up next to me, I will knock him out now. BY THE COURT: So you don't want him? MR. REED: If he comes up to me, I will knock him out right here. I want an attorney. I don't have an attorney. I want an attorney and I don't have an attorney. I want an attorney and I wish it to be plain in the record I want an attorney. BY THE COURT: I think it is plain in the record." The court then indicated he would sentence the defendant without counsel and then imposed sentence. The defendant then had a tantrum in front of the court, pounding upon the rail and repeating: "I do not want him. I do not want him. I do not want him. I do not want him. I do not want him." He then said: "I do not want him and I do not have an attorney here to represent me at the present time and if he steps up here beside me, I will knock him out."

In the light of the foregoing the assignment re the deprival of counsel at sentencing boils down to this: Is the defendant entitled without showing adequate and sufficient reason to demand change of appointed counsel? This court said no in State v. Bratton, 187 Neb. 460, 191 N. W. 2d 612. See, also, Annotation, 36 A. L. R. 3d, Public Defender Statutes—Construction, § 10, p. 1441; Annotation, 157 A. L. R., Counsel for Accused—Change of, p. 1226. In this case it is patent that the defendant's dissatisfaction with counsel had no reasonable basis. His lack of assistance by counsel at sentencing was the result of his own misconduct. If the defendant's wishes alone were the criteria to be followed he could change counsel each step of the proceeding without cause. The constitutional right to counsel does not extend this far.

AFFIRMED.