STATE OF NEBRASKA, APPELLEE, v. PAUL BLUNT, APPELLANT.

246 N. W. 2d 727

Filed November 17, 1976. No. 40658.

Alan E. Peterson of Cline, Williams, Wright, Johnson & Oldfather, for appellant.

Paul L. Douglas, Attorney General, and Gary B. Schneider, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

PER CURIAM.

In this post conviction action defendant, Paul Blunt, sought to vacate and set aside a judgment and sentence of 24½ to 35 years imprisonment entered by the District Court for Douglas County on December 8, 1970, following defendant's conviction on a charge of robbery. Following the evidentiary hearing in the District Court on the motion to vacate and set aside the sentence, the District Court overruled the motion for post conviction relief on all grounds except one.

The District Court found that in the former direct appeal of the robbery conviction, after jurisdiction had vested in the Supreme Court, the District Court which had tried the case permitted defendant's appointed ap-

pellate counsel to withdraw on grounds that the appeal was "wholly frivolous" and the defendant was therefore required to and did proceed pro se in this court. The District Court in the current proceeding therefore granted the defendant a new direct appeal from the robbery conviction and sentence with time for appeal to begin on January 22, 1976. That appeal is now before this court.

The State contends that under the provisions of the Post Conviction Act neither the District Court nor this court has jurisdiction to grant or consider a new direct appeal from the robbery conviction and sentence of December 8, 1970. The State also denies that defendant has or had grounds for relief, either on direct appeal or under post conviction proceedings.

In view of the dual state-federal court consideration of varying aspects of this case, and to remove any doubt as to exhaustion of state remedies, we consider the issues fully.

The facts underlying the defendant's conviction for robbery are set out in State v. Blunt, 187 Neb. 631, 193 N. W. 2d 434. Briefly, the evidence showed that on May 28, 1970, after having first entered a cleaning establishment on a pretext, the defendant left and returned a few minutes later. He created a disturbance in the rear room and again left the premises. He later returned and attempted to take some money out of the cash drawer. The counterclerk closed the drawer on his hand. Blunt pushed her away with sufficient force that she fell and lacerated her knees. Blunt then jerked the cash drawer out, removed the money, and fled. He was apprehended a few minutes later about 2 blocks from the cleaning establishment. The amount missing from the cash drawer was $169.26, and the defendant was in possession of a substantial portion of that amount in cash and checks and a claim check from the cleaning establishment in another name. He also had a scraped area on the back of his hand.

The District Court appointed a representative of the public defender's office as counsel for Blunt and the first trial commenced on September 14, 1970. After a jury was convened and trial commenced, a mistrial was granted. Blunt's counsel had disclosed defendant's prior felony convictions in the voir dire of the jury. Counsel's reason for disclosure was that Blunt's defense was an alibi and counsel assumed that Blunt would, of necessity, testify. Blunt was incensed at his counsel for the disclosure and later requested counsel's removal. At a hearing after the mistrial the trial court offered to appoint another counsel from the public defender's office but flatly refused to appoint private counsel. Blunt refused and asked for time to obtain his own attorney. A new trial date was set for November 2, 1970. Blunt did not obtain counsel and on the new scheduled trial date he appeared before the trial court and stated that he would not permit anyone from the public defender's office to represent him. He was again offered assistance from the public defender's office and again he refused. He asked for more time to prepare for trial, as did the public defender's office. The trial court denied the requests, called the case for trial that afternoon, and directed that the public defender's office be in court to assist Blunt in the trial. Blunt then went to trial with the same representative of the public defender's office who had represented him in the prior aborted trial acting as his technical advisor. Blunt personally made opening comments to the jurors before voir dire in which he recited his "bad history" and told them he was representing himself because he and his attorney had developed a lot of distrust. After these opening remarks Blunt conducted little of the trial himself. The legal advisor told Blunt when to object or cross-examine and then Blunt would tell the legal advisor to go ahead and do it. Technically, however, Blunt was in charge as his own counsel with the legal advisor's assistance. The trial proceeded in comparatively routine fashion.

The State called three witnesses who were all cross-examined by the legal advisor, although Blunt himself cross-examined the counterclerk following her recall for redirect examination. Blunt's cross-examination of her was directed at her testimony at the preliminary hearing as to whether or not she had identified Blunt at that hearing. She repeated her previous testimony that she identified him at the preliminary hearing.

After these State's witnesses had been examined, the State moved to strike the names of the three witnesses remaining on its list of witnesses. This motion was granted over the objection of the legal advisor for Blunt. The legal advisor then filed five praecipes for subpoenas for witnesses. Trial was recessed until the following morning. The only witness who appeared the next morning was the manager of the cleaning establishment.

The court, before proceeding, determined that Blunt also wished to recall two State's witnesses who had previously testified 2 days before, been examined and cross-examined, and released. The court refused to issue subpoenas for their reappearance. The legal advisor for Blunt then examined Richard Parsons, the store manager, who was the only witness presented by the defendant. The defendant rested. The jury found the defendant guilty.

Motion for new trial was filed and overruled. An habitual criminal count was dismissed by the State before sentencing. On December 8, 1970, Blunt was sentenced to 24½ to 35 years in the Nebraska Penal and Correctional Complex for robbery. On December 23, 1970, Blunt filed a notice of appeal to the Supreme Court and a praecipe for transcript requesting that it include a transcript of the preliminary hearing. The transcript of the preliminary hearing was lost or misplaced and has not been found. The District Court appointed a different member of the public defender's staff to represent Blunt on the appeal. After jurisdic-

tion vested in the Supreme Court, the new counsel from the public defender's office filed a motion in the District Court for leave to withdraw as appointed counsel on the ground that the appeal was frivolous. The trial judge who presided at the trial granted the motion to withdraw on May 20, 1971. Thereafter, in the appeal to the Supreme Court, Blunt therefore represented himself. The brief for Blunt was pro se. This court affirmed his conviction on that appeal on January 7, 1972. See State v. Blunt, 187 Neb. 631, 193 N. W. 2d 434.

Blunt's motion to vacate and set aside his sentence under the Post Conviction Act raises issues which, for purposes of this opinion, we will separate into issues related to the trial stage and issues related to the appeal.

As to the trial stage, the defendant asserts: (1) That defendant made an involuntary, unintelligent, and unknowing waiver of counsel at trial;

(2) That defendant's trial counsel caused the mistrial, and prior to that trial performed only nominal investigation of the case;

(3) That the appointment of the same individual as legal advisor instead of the appointment of separate nonpublic defender counsel denied defendant effective assistance of counsel;

(4) That the trial court deprived defendant of due process of law by (a) failing to advise or assist defendant in his jury selection rights, (b) failing to grant defendant an opportunity to obtain a transcript of the preliminary hearing, and (c) refusing to grant a continuance to defendant in proceeding pro se;

(5) That the trial court erred in failing to recall certain State's witnesses, and to provide compulsory process for certain defense witnesses; and

(6) That the evidence was so deficient on the required element of taking by force that the conviction constituted a denial of due process of law.

As to the appeal, the defendant contends that:

(1) Defendant was denied his right to counsel on appeal because the trial court, rather than a reviewing court, granted appointed counsel the right to withdraw and refused to grant defendant effective counsel on appeal;

(2) The State failed to provide a transcript of the preliminary hearing for use on appeal; and

(3) The defendant's sentence was excessive.

In general, the issues raised by the defendant which are related to the trial stage are grounded on allegations that his counsel was so incompetent and ineffective that to permit Blunt to proceed pro se with that counsel's assistance as legal advisor rather than to appoint new counsel outside the public defender's office was sufficient to deny Blunt the effective assistance of counsel and there was no constitutionally valid waiver of the right to counsel at trial. The evidence, however, was contradictory on many of the factual issues involved. The individual who represented Blunt as counsel at the mistrial and as legal advisor in the actual trial denied that Blunt had asked him to make an investigation to locate witnesses or had given him the name or names of any possible witnesses to be interviewed.

Blunt wants to have it both ways. He contends on the one hand that he did not voluntarily, intelligently, and knowingly waive his right to counsel; and also contends that his legal advisor was ineffective and incompetent counsel. The trial court expressed confidence in the individual appointed to represent Blunt but also offered to appoint other counsel from the public defender's office. The court expressed the view that it was highly advisable for Blunt to have counsel, and that he should not undertake to proceed pro se, but the court refused to appoint counsel outside the public defender's office. The offers were refused by Blunt who stood on his demand that he be given private counsel and, if not, that he be permitted to proceed as his own counsel.

The law is quite clear that the right of an indigent

defendant to have counsel does not give him the unbridled right to be represented by counsel of his own choosing and that mere distrust of, or dissatisfaction with, appointed counsel is not enough to secure the appointment of substitute counsel. See State v. Bratton, 187 Neb. 460, 191 N. W. 2d 612. An indigent defendant who refuses to accept offered counsel without justifiable reason and elects to proceed pro se has not been deprived of his constitutional right to counsel. See, State v. Reed, 188 Neb. 195, 195 N. W. 2d 503; State v. Thunder Hawk, 188 Neb. 294, 196 N. W. 2d 194.

The determination of whether there has been an intelligent waiver of the constitutional right to counsel must depend in each case upon its particular facts and circumstances, including the background, experience, and conduct of the accused. Johnson v. Zerbst, 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461. In this case, Blunt's demands to have an individual attorney in the public defender's office released were complied with and the court then offered to appoint other counsel from the public defender's office. No sufficient reason has ever yet been advanced by Blunt for rejecting that offer. Blunt demanded the release of the public defender appointed for him and refused to accept the offer to appoint any other public defender, after being informed by the court that either of such counsel would competently represent him, and that no attorney outside the public defender's office would be appointed. Those facts establish that Blunt adequately and sufficiently waived his right to be represented by counsel at trial in District Court. See Johnson v. United States, 318 F. 2d 855 (8th Cir., 1963).

Defendant's claims of error in the trial court on grounds of deprivation of due process are marginal at best and require no detailed discussion. Blunt does claim, however, that he was denied his Sixth Amendment right to compulsory process. The record fails to support that assertion. When the prosecution rested, it

moved to strike the names of three witnesses remaining on its list. The motion was granted over the objection of Blunt's legal advisor, who then filed five praecipes for subpoenas for witnesses. Three of those five were the prosecution witnesses who had been stricken. The other two were the manager of the cleaning establishment and one Wanda Cokes, who (on a collateral record) allegedly might testify how Blunt happened to have an injured hand. So far as the record shows, subpoenas were personally served on two individuals. The other three were not found after due search and inquiry. The manager of the cleaning establishment appeared and testified. Wanda Cokes was not found. At no time has Blunt or his counsel stated for the record what the expected testimony of any of the five witnesses would be. There is no showing that it was not cumulative, nor impeaching, nor that there was any probability that it might affect the result, nor has it ever been shown that due diligence had been exercised to secure the attendance of any absent witnesses. Even on this appeal there is still no specific information as to why the failure of four witnesses to appear was a denial of due process. Neither is there yet a showing of how or why the absence of the testimony of any of these witnesses was prejudicial to the defense.

When trial resumed on the day after Blunt's subpoenas had been issued, Blunt also requested that two of the State's witnesses who had testified 2 days before be subpoenaed to return, and this request was denied. The two witnesses had been examined and cross-examined and Blunt himself participated in a recross-examination of one of them. As to these two witnesses also there was no showing that they could not have been fully examined when they were on the stand, nor was there any showing as to how or why additional testimony, or the absence of it, was in any way prejudicial to Blunt.

In any event, the evidence and the record fail to es-

tablish the claim that Blunt was denied his Sixth Amendment rights to compulsory process.

Turning to the issues involved at the appeal stage, the evidence establishes that on Blunt's prior appeal to this court it was the trial judge who reviewed the record and granted the motion of appointed counsel on appeal to withdraw. Blunt's motion for appointment of alternate counsel on appeal was then also denied by the same District Judge. This court did not review nor rule on either of these motions.

The only briefs submitted in this court on Blunt's behalf were prepared with the assistance of the inmate legal assistance program at the penitentiary. On such facts it is clear that Blunt was deprived of his right to counsel on appeal and did not have an effective appeal. The decision on the former appeal must therefore be deemed a nullity. See, Douglas v. California, 372 U. S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811; Anders v. California, 386 U. S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493; Blunt v. Wolff, 501 F. 2d 1138.

Blunt also contends that failure to provide a transcript of the preliminary hearing for use on the appeal rendered the appeal critically deficient. By the time of the appeal the transcript of the preliminary hearing had been misplaced, lost, or destroyed. The only basis for the assertion that the transcript was necessary is Blunt's claim that the counterclerk failed to identify him at the preliminary hearing. The counterclerk testified under oath at trial that she had identified him at the preliminary hearing. She also identified him at trial, as did every other prosecution witness. There is no credible basis to support any claim that the loss of the transcript of the preliminary hearing was prejudicial to the defendant.

The State takes the position that in a post conviction proceeding such as this where there has been one prior appeal, neither the District Court nor this court has jurisdiction to grant a new direct appeal under the

terms of the Post Conviction Act. §§ 29-3001 et seq., R. R. S. 1943.

Under the terms of the Nebraska Post Conviction Act, if the District Court determines that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Constitution of this state or the Constitution of the United States, "the court shall vacate and set aside the judgment and shall discharge the prisoner or resentence him or grant a new trial as may appear appropriate." § 29-3001, R. R. S. 1943.

In the case now before us we have determined that there was no error of constitutional dimensions at the trial stage of the original criminal proceedings but that there was a denial of the constitutional right to counsel on the former appeal. Under the State's interpretation of the Post Conviction Act, if the evidence establishes that there was a denial of the constitutional right to counsel at any stage of the proceedings the only remedy is to discharge the prisoner or grant a new trial, even though the denial of counsel occurred only at the appeal stage and not at trial. We do not believe the Legislature intended any such restriction on the jurisdiction of the court, nor on its power to grant relief.

The Legislature specifically gave the District Court the power to set aside a judgment if the court found there had been a denial or infringement of the prisoner's constitutional rights sufficient to render "the judgment" void or voidable. That power obviously includes the power to void the entire criminal proceeding, including judgments on trial and on appeal, if there was one. Jurisdiction and power to set aside judgments or proceedings are not restricted to all or nothing. Where the evidence establishes a denial or infringement of the right to counsel which occurred only at the appeal stage of the former criminal proceedings, the District Court has jurisdiction and power, in a post conviction proceeding, to grant a new direct appeal without granting

a new trial or setting aside the original conviction and sentence. The Legislature intended to give the courts jurisdiction to grant appropriate relief under the Post Conviction Act. The court is specifically empowered to vacate and set aside "the judgment." The judgment of this court on appeal is a "judgment" within the meaning of the Post Conviction Act, if that judgment is voidable because of a denial or infringement of constitutional rights. The power to grant a new appeal is implicit under the provisions of section 29-3001, R. R. S. 1943.

The final issue involves the sentence of 24½ to 35 years imposed upon Blunt for the robbery. Blunt contends the sentence is excessive. While the court is not unanimous, a majority has determined that the original sentence of 24½ to 35 years imprisonment was not excessive.

Blunt also contends that the sentence is in violation of section 83-1,105, R. S. Supp., 1976, the relevant portion of which became effective July 6, 1972. That section applies to indeterminate sentences and specifically provides that "the minimum limit fixed by the court shall not be less than the minimum provided by law nor more than one-third of the maximum term, * * *." The maximum for robbery is and was 50 years. Therefore, the minimum limit of an indeterminate sentence for robbery cannot exceed 16 2/3 years. When the law under which a defendant was convicted is amended pending appeal so as to mitigate the punishment, it is logical to assume that the Legislature intended the new punishment, which it now feels fits the crime, to apply whenever possible. State v. Randolph, 186 Neb. 297, 183 N. W. 2d 225. The appeal now before us is a direct appeal, the former appeal being a nullity, and the rule is applicable. The minimum term of the sentence imposed on Blunt is reduced from 24½ years to 16 2/3 years in conformity with the statute.

The judgment of the District Court in the post con-

viction proceeding is affirmed in all respects. On the direct appeal from the original conviction and sentence, the conviction for robbery is affirmed. The sentence of 24½ to 35 years is vacated and a sentence of 16 2/3 years to 35 years is imposed.

AFFIRMED AS MODIFIED.

BRODKEY, J., not participating.

McCOWN, J., concurring in part and dissenting in part.

I concur in the majority opinion with the exception of that part of the opinion dealing with the excessiveness of the sentence. My views on that score were set out in the former case of State v. Blunt, 187 Neb. 631, at page 633, 193 N. W. 2d 434, at page 436.

The defendant here took something over $100 in cash and checks from a cash register and pushed or shoved the cashier to her knees when she shut the cash register drawer on his fingers. He did not display or use or pretend to have any weapon.

It is significant that an habitual criminal charge was dismissed before he was sentenced. We have very recently held in State v. King, 196 Neb. 821, 246 N. W. 2d 477, that proportionality in sentencing ought to mean that the more serious offenders generally merit the greater punishment and that those offenders who offer the greatest menace to society deserve the greater punishment. In the case now before this court the original minimum sentence of 24½ years was 4½ years more than the highest minimum which could be imposed on an habitual criminal charge for conviction of any crime except murder. The minimum sentence of 16 2/3 years now imposed by this court is exactly twice as much as the highest minimum term which can be imposed for forcible sexual assault causing serious personal injury, and the maximum sentence of 35 years is 10 years more than the maximum which can be imposed for that crime.

Clearly the defendant's prior record is bad. He is entitled to no leniency. That fact should not justify a sentence which clearly does not fit the crime. Neither

does it authorize the court to sentence him as though the habitual criminal count had not been dismissed. Any sentence in excess of 10 years, in my opinion, constituted an abuse of discretion on the facts here. Where the court is required to enter a new sentence, as it is here, that sentence ought to reflect a more evenhanded justice. Injustice remains intolerable, no matter what proportions it may have.