STATE OF NEBRASKA, APPELLEE, v. GEORGE C. CHIPPS, APPELLANT.

279 N. W. 2d 874

Filed June 12, 1979. No. 42297.

Donald J. Loftus, for appellant.

Paul L. Douglas, Attorney General, and Robert F. Bartle, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

The defendant, George C. Chipps, filed a petition for post conviction relief seeking to vacate and set aside a judgment and sentence of 1 to 3 years imprisonment following his conviction on a charge of shooting with intent to kill, wound, or maim. Following an evidentiary hearing on May 24, 1978, the District Court denied the motion for post conviction relief. On June 12, 1978, the District Court appointed counsel for the defendant. On July 6, 1978, after a hearing on a motion for new trial, the District Court vacated its order denying post conviction relief and granted the defendant a new direct appeal from his criminal conviction and sentence, without vacating and setting aside the original conviction and sentence.

The former direct appeal was dismissed by this court September 16, 1977, on the ground that the defendant's motion for new trial was filed out of time. The District Court, in the current proceeding, granted the defendant a new direct appeal from his conviction on the charge of shooting with intent to kill, wound, or maim. The defendant also appeals from the order of the District Court in the post conviction action upon the ground that the granting of a new direct appeal was insufficient and the District Court should have set aside his conviction and sentence and granted a new trial. We consider both appeals.

Briefly summarized, the evidence at defendant's trial established that in November 1975, after 30 years of marriage, the defendant moved out of the residence occupied by him and his wife in Ravenna, Nebraska. They lived separately thereafter. Early in the morning of July 28, 1976, the defendant's wife received a telephone call from the defendant. At

about 4 a.m., she heard a knock on the door and went to see who was there. The door was locked but the top half of the door was glass. The defendant, standing outside, asked to be let in but his wife refused. The defendant lifted his hand which was covered by a paper sack. Sparks flew from the paper sack, and the defendant's wife was shot in the right breast. She ran out the back door, heard another shot as she ran, went to the neighbor's house, and an ambulance was called. Police officers arrived at the house shortly afterwards and found the defendant inside the house. A .38-caliber revolver was found on a shelf in the bedroom closet. Two bullets were found imbedded in the house walls. Both bullets had been fired from the revolver. The paper bag, through which the gun had been fired, was also found at the scene.

The defendant admitted firing the shots, but his defense was that the shooting of his wife was accidental. His version was that he took the gun and shells to his wife's house because he wanted her to have them for protection. He testified that he had the gun and shells in a paper sack, and that he accidentally dropped the sack outside the door. When he picked it up he hit the screen door with it, causing the gun to accidentally discharge. When he realized that his wife had been shot, he shot at the lock on the door in an attempt to get in and help her. When that attempt was unsuccessful, he broke the window on the top half of the door, reached in, and unlocked the door. He denied that he ever had any intention to shoot, kill, or wound his wife.

The only eyewitnesses were the defendant and his wife. Several persons testified that they did not believe the defendant would ever intentionally harm his wife. Two witnesses also testified that after the shooting the defendant's wife had told them the shooting was an accident, and that the defendant would not shoot her intentionally. There was other

testimony, however, that the defendant had been abusive to his wife in the past, and that he had at one time attempted to strangle her when he had been drinking. There was evidence that he had been drinking on the night of the shooting.

The jury found the defendant guilty. After a presentence investigation, he was sentenced to not less than 1 nor more than 3 years imprisonment. Defendant's motion for new trial asserted that the verdict was contrary to the evidence, and also alleged prejudicial conduct on the part of the county attorney in communicating nonverbally with the complaining witness during the defendant's testimony.

The evidence is clearly more than sufficient to support the jury's verdict. There is likewise no evidence in the bill of exceptions of the criminal trial to support the allegations of misconduct of the county attorney. Affidavits were filed in the motion for new trial alleging that such conduct was observed by the jury. In the post conviction evidentiary hearing extensive evidence was taken with respect to the allegations of misconduct on the part of the county attorney. Rather than supporting the claims of the defendant, the record establishes, by the testimony of the court reporter, deputy clerks of the District Court, the prosecution attorney, and the defense attorney, that the allegations were unsupportable. The findings by the District Court in the post conviction action confirm that determination. The direct criminal appeal might well be termed frivolous.

The defendant's allegations in the post conviction proceeding, aside from the allegations as to the misconduct of the prosecuting attorney at the trial, dealt entirely with alleged incompetence of trial counsel. There were 14 witnesses called at the evidentiary hearing and the record contains almost 140 pages of testimony. The District Court found the evidence was clear and convincing that the defendant had the benefit of the effective assistance of coun-

sel at all stages of the trial proceedings. That finding is fully supported by the record.

The District Court also found that by reason of the failure to file a motion for new trial within time, the defendant was deprived of his right to appeal. The court therefore granted the direct appeal which we have previously discussed. The defendant's argument that he is entitled to have the judgment and sentence set aside and to have a new trial merely because of the loss of the right of direct appeal is answered by State v. Blunt, 197 Neb. 82, 246 N. W. 2d 727. In that case we held: "In a post conviction proceeding where the evidence establishes a denial or infringement of the right to counsel which occurred only at the appeal stage of the former criminal proceedings, the District Court has jurisdiction and power to grant a new direct appeal without granting a new trial or setting aside the original conviction and sentence." That case is controlling here.

On the direct appeal from the original conviction and sentence for shooting with intent to kill, wound, or maim, the conviction and sentence is affirmed. In the post conviction proceeding, the judgment of the District Court is affirmed in all respects.

AFFIRMED.