STATE OF NEBRASKA, APPELLEE, V.
RONALD TOOF, JR., APPELLANT.
616 N.W. 2d 32

Filed July 25, 2000. No. A-99-1288.

Michael T. Varn for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

IRWIN, Chief Judge, and SIEVERS and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

Ronald Toof, Jr., was convicted by a jury and sentenced by the district court on a charge of third degree assault on an officer. On appeal, Toof asserts that the district court erred in (1) not

granting his motion to dismiss at the close of the State's evidence, (2) admitting testimony regarding prior bad acts, (3) improperly commenting to the jury, (4) not finding that the verdict was the result of ineffective assistance of counsel, and (5) rendering a sentence of imprisonment.

## PROCEDURAL BACKGROUND

The State of Nebraska charged Toof by information with third degree assault on an officer, pursuant to Neb. Rev. Stat. § 28-931 (Reissue 1995). On November 12, 1998, a verdict of guilty was returned by the jury, and Toof was sentenced on December 16 to imprisonment for not less than 1 year nor more than 18 months. No direct appeal was perfected.

Toof, with newly acquired counsel, filed a motion for postconviction relief which, although the motion is not part of the record before us, apparently alleged that, inter alia, he was denied his constitutional right to appeal because of the conduct of trial counsel and that he was entitled to a new trial on other grounds that we cannot ascertain from the record. On October 13, 1999, the motion was granted on the ground that Toof was denied his constitutional right to appeal because of the conduct of trial counsel. Other alleged grounds for postconviction relief were denied. The district court determined that the remedy available to Toof was a resentencing hearing, thus allowing him renewed opportunity to appeal from the conviction and sentence. On October 13, Toof was resentenced to the same term of imprisonment as before, with credit for time served under the initial sentence. A notice of appeal was timely filed from this order. Therefore, this appeal reaches us as if on direct appeal, rather than an appeal from the denial of postconviction relief.

*Recent Nebraska Supreme Court Pronouncements.*

In order to determine the extent of the record on appeal we are reviewing, we think it is necessary to examine the recently developing case law with respect to the procedural background of the instant case. The Nebraska Supreme Court has previously held that where a defendant is denied his or her right to an appeal because counsel fails to perfect an appeal, the proper vehicle for the defendant to seek relief is through the

Nebraska Postconviction Act. *State v. Trotter,* 259 Neb. 212, 609 N.W.2d 33 (2000), citing *State v. Johnson,* 243 Neb. 758, 502 N.W.2d 477 (1993), *State v. Carter,* 236 Neb. 656, 463 N.W.2d 332 (1990), and *State v. Halsey,* 195 Neb. 432, 238 N.W.2d 249 (1976). In *Trotter, supra,* the Supreme Court determined that Trotter's trial counsel's performance in failing to perfect his direct appeal was deficient, which caused his appeal to be dismissed. The court held that the failure to perfect the appeal was presumptively prejudicial and that as a matter of law, Trotter was denied his constitutional right to effective assistance of counsel and was entitled to postconviction relief. The court then addressed the relief which may be afforded to Trotter. Trotter had asked the district court to reinstate his direct appeal. The district court had determined that such relief was not available in a postconviction action. The *Trotter* court stated:

> [W]e recently outlined the procedure to be followed by the trial courts in our published order entered in *State v. McCracken,* 259 Neb. 1049, 615 N.W.2d 882 (2000), wherein we directed the trial court to grant a new direct appeal, rather than reinstating a past appeal, where a criminal defendant whose previous appeal was dismissed is successful in obtaining postconviction relief. In the *McCracken* order to which reference is made, we indicated that the proper relief is a new direct appeal. . . . The record would necessarily contain the same record as the original appeal would have contained, with some indication that the defendant was awarded postconviction relief of a new direct appeal.

*Trotter,* 259 Neb. at 224, 609 N.W.2d at 41. The Supreme Court in the *McCracken* order, dated February 3, 2000, in attempting to provide guidance for future cases, addressed the issue of how a new direct appeal should proceed in the appellate courts once it has been granted as postconviction relief by the district court. The court held that a district court should more properly grant a new direct appeal, rather than reinstate a past one. "Thus, a defendant obtaining such relief could then appeal from his or her original conviction and sentence based on the grant of such postconviction relief. The record before this court would then necessarily contain the same record as if the 'new direct appeal'

were the original direct appeal . . . ." *State v. McCracken*, 259 Neb. 1049, 1050, 615 N.W.2d 882 (2000) (published order). The court in *McCracken* also recognized that it had previously held in a procedurally similar case, *State v. Jones*, 241 Neb. 740, 491 N.W.2d 30 (1992), that when a district court reinstates a direct appeal, the postconviction record is necessarily before the court as a prerequisite to the Nebraska Supreme Court's jurisdiction. In *Jones*, the defendant, in his brief, cited to the postconviction hearing record. The court found that only the conviction and sentencing records created in the district court prior to an original direct appeal are properly reviewable in a reinstated direct appeal and that a review of the entire postconviction record is precluded on direct appeal. Our review of the *Jones*, *Trotter*, and *McCracken* holdings lead us to conclude that the postconviction record is necessarily before the district court as a prerequisite to the appellate court's jurisdiction but that in the appellate court, the postconviction record is not reviewed.

█ *State v. Trotter*, 259 Neb. 212, 609 N.W.2d 33 (2000), and *McCracken, supra*, both quote *State v. Blunt*, 197 Neb. 82, 92-93, 246 N.W.2d 727, 734 (1976), for the proposition that the trial court "has jurisdiction and power, in a post conviction proceeding, to grant a new direct appeal without granting a new trial or setting aside the original conviction and sentence."

*Instant Case.*

In the case at hand, the district court vacated the sentence, but not the conviction, and resentenced Toof in order to allow a direct appeal. We find that although the preceding authority holds that the district court should grant a new direct appeal without setting aside the sentence, the procedure used by the district court in the case at hand, wherein Toof was resentenced, had the same effect as granting a new direct appeal. Under the foregoing authority, only the record from the trial and initial sentencing is properly before us on appeal. Consequently, we proceed to examine only that part of the record. As there is no appeal from the postconviction proceeding, we disregard that part of the record.

## SUMMARY OF EVIDENCE

On the evening of May 21, 1998, or the early morning hours of May 22, in Rushville, Nebraska, Toof; his girl friend,

Patricia Peters; Christopher Trombley; and Kim Stenson entered a bar together and consumed alcohol. Toof left after a short time. Approximately 15 to 45 minutes later, depending on the testimony, Peters and Stenson left together. The bartender and Trombley were the only individuals in the bar at this time. Shortly thereafter, Toof called looking for Peters. The bartender advised Toof that Peters had left with Stenson. After the telephone call, Peters came back into the bar. A short time later, Toof returned to the bar and began slapping, pushing, and grabbing Peters. A baby had been born to Toof and Peters about 5 months before the events of the night in question, and Toof had the baby with him upon his return to the bar. The bartender attempted to intervene between Toof and Peters, and he testified that he was hit by Toof and suffered a sore, bloody nose. About this same time, Trombley was attempting to calm Toof, but testified he was hit in the head and knocked to the floor, apparently by Toof, although his testimony does not indicate who hit him. The bartender called the 911 emergency dispatch service and an officer responded immediately. Before the officer arrived, Peters had taken the baby and locked herself in the bathroom. Toof punched a hole in the door and gained entry to the bathroom. Toof took the baby and was leaving the bar as the officer was entering the bar. Toof walked past the officer, who followed Toof outside. Toof was attempting to put his keys in the ignition of his vehicle, which was parked in front of the bar, when the officer approached and grabbed the keys. Three people testified at the trial about the activity outside the bar between Toof and the officer.

The bartender testified that when he went outside, he saw the officer on his back on the ground, Toof was on top of the officer, and Toof had his hands around the officer's "throat." The bartender testified that he assisted the officer by rolling Toof off and restraining Toof while the officer placed handcuffs on him. The bartender also saw a man, later identified as Albert Brave, with a bloody face standing outside near the bar.

The officer testified that after he took Toof's keys, Toof exited the vehicle and forcibly took him to the ground, the officer falling to his back with Toof on top. The officer testified that

Toof reached for his throat and that the officer was attempting to control Toof's hands. He testified that Toof was not successful in choking him. They struggled on the ground for less than a minute, and the officer could not get Toof off him. Not until the bartender assisted was the officer able to get Toof off him and placed in handcuffs. The officer also testified that after Toof was in custody, he noticed Brave with a bloody face and shirt standing outside near the bar.

Toof testified that when he came back to the bar looking for Peters, he was angry about Peters not caring for the baby. Toof testified that the bartender approached and hit him and that Toof pushed him down but did not hit him. Toof testified that he did hit Trombley inside the bar because Toof thought Trombley was coming after him. He testified that Brave then came in the bar, took the baby, and left. Toof caught up with Brave, retrieved the baby, pushed Brave to the ground, and "stomped on him a few times." Toof went back into the bar with the baby, and Peters took the baby into the bathroom. Toof was knocking hard on the bathroom door, and a piece of the door fell out. He took the baby to the vehicle, and the officer approached and took his keys. Toof testified that the officer was pulling on his shirt and that as Toof stepped out of the vehicle, the officer tripped and fell down, pulling Toof with him. Toof put his hand on the officer's chest and was pushing up, saying he just wanted to get home. That is when the bartender intervened. Toof denied choking the officer, denied resisting the officer, and denied assaulting the officer.

## ASSIGNMENTS OF ERROR

Toof alleges, restated, that the trial court erred in (1) failing to grant his motion to dismiss at the close of the State's evidence and failing to find that the verdict was not sustained by the evidence and was contrary to law, (2) admitting testimony regarding prior bad acts, (3) making a statement to the jury during voir dire regarding Toof's electing or not electing to testify on his own behalf, (4) not finding that the jury verdict was the result of ineffective assistance of counsel because counsel failed to call a certain witness, and (5) sentencing him to a term of imprisonment rather than probation.

## ANALYSIS

*Motion to Dismiss.*

■ The Nebraska Supreme Court has previously held that a defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution, and who, after the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge the trial court's overruling of the motion for dismissal or for a directed verdict, but may challenge sufficiency of the evidence for the defendant's conviction. *State v. Huebner*, 245 Neb. 341, 513 N.W.2d 284 (1994); *State v. Gray*, 239 Neb. 1024, 479 N.W.2d 796 (1992). Since Toof presented evidence in his defense after his motion to dismiss was overruled, he waived his right to challenge on appeal the trial court's ruling on his motion to dismiss. However, as one component of his first assignment of error, Toof does assign the sufficiency of the evidence. Although not separately assigned as error, we proceed to address the sufficiency of the evidence.

■ Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Long*, 8 Neb. App. 353, 594 N.W.2d 310 (1999), quoting *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995).

The elements of the offense of which Toof was convicted are intentionally, knowingly, or recklessly causing bodily injury to a peace officer while such officer is engaged in the performance of his or her official duties. See § 28-931. In Toof's brief, he focuses on the issue of whether the officer suffered bodily injury by the intentional, knowing, or reckless acts of Toof. For purposes of the Nebraska Criminal Code,

bodily injury shall mean physical pain, illness, or any impairment of physical condition. Neb. Rev. Stat. § 28-109(4) (Reissue 1995). Keeping in mind that an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence and that the evidence will be viewed and construed most favorably to the State, we find sufficient evidence to support the conviction. The officer testified that during his contact with Toof outside the bar, Toof forced him to the ground such that he landed flat on his back, with Toof on top of him. He testified that the fall hurt him, that it knocked the wind out of him and stunned him for a moment, and that "shortly after this happened for about two days I experienced a numbness in the ring finger of my right hand and in the two middle fingers of my left hand." He further testified that other than the numbness, the pain did not last after the initial pain from hitting the ground.

Toof argues that the officer did not suffer bodily injury as provided for in the statute. In *State v. Melton*, 239 Neb. 576, 477 N.W.2d 154 (1991), a deputy sheriff had asked the defendant for the knife he was wearing on his belt. The defendant spun around and, with an open hand, slapped the deputy on the face. The force of the blow knocked the deputy's eyeglasses across the room. The defendant then slapped the deputy a second time, and upon the third attempt, he caught a portable radio microphone attached to the deputy's lapel. The deputy testified that the first blow caused him pain and numbness in his right cheek. The court held that this constituted bodily injury under § 28-931. We hold that the injuries suffered by the officer in this case satisfied the definition of bodily injury under Nebraska jurisprudence.

Toof also argues in his brief that there is no testimony establishing that the injury occurred as a direct result of these events, but, rather, that the injury may have been the result of the officer's accidentally falling while taking the vehicle keys from him, striking Toof, or placing the handcuffs on him. Given our standard of review, we decline to disturb the verdict. The evidence is sufficient to show that the injuries sustained by the officer resulted from the actions of Toof. The evidence is also sufficient to establish that the acts were intentional, knowing, or reckless.

*Prior Bad Acts.*

 In Toof's brief, he argues generally that testimony of prior bad acts was erroneously received at trial. As we have already determined, an appellate court will not consider any evidence or testimony adduced at the postconviction hearing. The only evidence in the record with respect to the motion in limine is a journal entry of November 12, 1998, that states, in part, "The Defendant presented a motion in limine regarding use of evidence of prior bad acts and crimes. Argument was heard, and the Court finds that the motion in limine should be and is overruled." The record does not contain the motion in limine, if one was filed, nor does the bill of exceptions contain the proceedings or arguments from the hearing of November 12 with respect to the motion in limine. We do not know specifically what bad acts evidence Toof claims should have been excluded. Without a more complete record, it is difficult to examine or determine the correctness of the trial court's ruling on the motion in limine. It is incumbent upon the party appealing to present a record which supports the errors assigned; absent such a record, as a general rule, the decision of the lower court is to be affirmed. *State v. Trackwell,* 250 Neb. 46, 547 N.W.2d 471 (1996); *State v. Dyer,* 245 Neb. 385, 513 N.W.2d 316 (1994). However, because of the context of the questions, answers, and objections in the record from the trial, we presume that the prior bad acts that were the subject of the motion in limine were the other assaults that occurred at the bar upon Toof's return. Therefore, we proceed to discuss this assignment of error. See *State v. Farrell,* 242 Neb. 877, 497 N.W.2d 17 (1993) (duty rests on defendant to object at trial to admission of evidence and to state specific grounds of objection if specific ground is not apparent from context in which objection was made).

During the testimony of the first witness, the bartender, Toof's counsel objected, and the court ruled as follows:

Q. After he had placed the baby on the bar, what did he do?

A. He went after [Peters].

Q. When you say "went after" her, describe what you saw.

[Defense counsel]: Object; Rule 404.

THE COURT: Overruled.

. . . .

Q. And then you said he went after [Peters]?

A. Um-hum.

Q. And you've already described what he was doing to her?

[Defense counsel]: Same objection.

THE COURT: Same ruling.

. . . .

Q. What did you do?

A. I quickly came around from out from behind the bar and tried to stop him.

Q. Were you successful?

A. No.

Q. What happened?

[Defense counsel]: Same objection.

THE COURT: Overruled.

[A.] I just tried to get in between him and [Peters] and just was trying to stop him, trying to cool him down, trying to get him to relax.

Q. What happened?

A. He went through me.

[Defense counsel]: Excuse me, Your Honor. May I have a continuing objection based upon Rule 404?

THE COURT: You may.

No further objection on the basis of Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404 (Reissue 1995), was made to the testimony of this or any of the other two witnesses for the State, both of whom ultimately testified to similar events described by the bartender.

 When a court overrules a motion in limine to exclude evidence, the movant must object when the evidence sought to be excluded by the motion is offered during trial. *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998). Error cannot be predicated on the admission of evidence to which no timely objection was made stating the specific ground of objection, if a specific ground was not apparent from the context. Neb. Evid. R. 103, Neb. Rev. Stat. § 27-103 (Reissue 1995). Where an objection has once been made to the admission of testimony and

overruled by the court, it is unnecessary to repeat the same objection to further testimony of the same nature by the same witness in order to preserve alleged error in the admission of the testimony to which the objection was made. Neb. Rev. Stat. § 25-1141 (Reissue 1995). Where testimony objected to is substantially identical to testimony admitted without objection, its admission is not prejudicial error. *Kirksey, supra.*

*Kirksey* presented a similar procedural situation. In *Kirksey*, the defendant objected to the relevancy of certain testimony of two witnesses concerning a drug conspiracy. However, he did not object to similar testimony by five other witnesses. The court, citing *McDonald v. Miller*, 246 Neb. 144, 518 N.W.2d 80 (1994), and *State v. Thompson*, 231 Neb. 771, 438 N.W.2d 131 (1989), stated that where testimony objected to is substantially identical to testimony admitted without objection, its admission is not prejudicial error, and held that the defendant's failure to object to testimony of other witnesses concerning the existence of the drug conspiracy precluded him from asserting on appeal that the admission of testimony from the first two witnesses constituted prejudicial error. In the instant case, Toof objected to the bartender's answering questions about Toof's angry behavior toward Peters in the bar on the evening in question. However, Trombley testified, without a rule 404 objection, that Toof was upset when he returned to the bar and was saying something to Peters, that Trombley tried to calm Toof down, and that after he was hit, he saw some "commotion" between Toof and Peters. We note that the testimony of the three witnesses for the State indicated, directly or circumstantially, that Toof displayed some assaultive behavior toward Peters, the bartender, Trombley, and Brave. No rule 404 objections were interposed by defense counsel to that testimony. We find that Toof is precluded from asserting on appeal this assignment of error.

Furthermore, we hold that this assignment of error would lack merit even if it had been properly preserved. The testimony regarding the prior assaults by Toof on the evening in question adduced at the trial was not offered by the State to prove the character of Toof in order to show that he acted in conformity therewith. Rather, the evidence, from our reading of the record, was properly admitted for other purposes, as

allowed by rule 404. In *State v. Stewart*, 209 Neb. 719, 310 N.W.2d 706 (1981), the issue was whether certain prior bad acts testimony was admissible in a trial for first degree assault. The court held that the admission of the evidence was erroneous and reversed the judgment. In so holding, the court stated: "The evidence of the earlier assault did not involve or explain the circumstances of the crime charged and was not an integral part of an overall occurrence or transaction." *Id.* at 721, 310 N.W.2d at 707.

In the present case, the evidence concerning the other assaults by Toof, which occurred immediately prior to the assault on the officer, explained the circumstances of the crime charged and illustrated the overall occurrence or transaction.

Because the exercise of judicial discretion is implicit in Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1995), it is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under rule 404(2), and the trial court's decision will not be reversed absent an abuse of that discretion. *State v. Freeman*, 253 Neb. 385, 571 N.W.2d 276 (1997).

We reject Toof's argument that the sole purpose of the evidence was to show Toof's character and that it was unfairly prejudicial. We find that Toof's assignment of error with respect to the testimony of prior bad acts is without merit.

*Comment During Voir Dire.*

During voir dire the following colloquy was had between the judge and two prospective jurors:

THE COURT: . . . .

As I've told you, the person who's accused of the offense is Mr. Ronald Toof, Jr. Are any of you related to him? Do any of you know Mr. Toof?

Okay. [Juror 19] again?

JUROR 19: He has been a customer in my store.

THE COURT: What is your store?

JUROR 19: It's the Barrel House.

THE COURT: Okay. And would the fact that he's been a customer there make any difference to you as a juror?

JUROR 19: No, sir.

THE COURT: I don't know if he'll be a witness in the case. He doesn't have to testify but he can if he wants to. Could you treat him the same as a person you didn't know if he were a witness?

JUROR 19: Yes, sir.

THE COURT: All right. Anybody else know Mr. Toof? . . .

. . . .

JUROR 1: I know him just from around town. My husband worked with his mother in the same store at one time.

THE COURT: Okay. Do you believe that you could be a fair and impartial juror in the case notwithstanding what you've described?

JUROR 1: Yes.

THE COURT: How about as a witness, assuming he decided to testify?

JUROR 1: Yes.

A trial judge should carefully refrain from expressing any opinion of or commenting on the evidence. *State v. Privat*, 251 Neb. 233, 556 N.W.2d 29 (1996). It is the duty of the court to abstain carefully from any expression of opinion or comment on the facts or evidence, not only in its charge to the jury, but also on the examination of witnesses and otherwise during the course of the trial. *Hansen v. State*, 141 Neb. 278, 3 N.W.2d 441 (1942).

Toof argues that the "tenor of the trial judge's comments to the jury would tend to leave an impression with the jury that the Court assumed that the Defendant would or should testify at the trial." Brief for appellant at 32. Toof cites *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965), in support. *Griffin* stands for the proposition that no inferences should be drawn from a defendant invoking his or her right to not testify in his or her own defense and that comment by the court or counsel on the defendant's failure to testify is improper. The remarks the judge made in the instant case cannot be construed as commenting on Toof's failure to testify. *Griffin* is inapplicable.

Were the remarks, nevertheless, improper and of such a magnitude that they amount to prejudicial error or plain error?

To establish reversible error, a defendant must demonstrate that a trial court's conduct, whether action or inaction during the proceeding against the defendant, prejudiced or otherwise adversely affected a substantial right of the defendant. *State v. Chapman*, 234 Neb. 369, 451 N.W.2d 263 (1990). Toof has not cited Nebraska authority that addresses this particular situation, and our research yields none. In *State v. Rodriguez*, 244 Neb. 707, 509 N.W.2d 1 (1993), defense counsel objected that the prosecution had been coaching the witness. The judge responded, " 'No, he wasn't. I was watching him.' " *Id.* at 709, 509 N.W.2d at 3. Defense counsel did not object to the judge's comment. The Nebraska Supreme Court held that a claim of improper conduct on the part of the trial judge in the presence of the jury will not be reviewed on appeal in the absence of a timely objection, but the timely objection requirement was inapplicable because the trial judge assumed the role of a witness. Neb. Evid. R. 605, Neb. Rev. Stat. § 27-605 (Reissue 1995), provides that no objection is needed in order to preserve the point. In *State v. Navrkal*, 242 Neb. 861, 496 N.W.2d 532 (1993), the trial judge instructed the witness to answer the question asked, and not respond with a narrative answer. Because no objection was made to the judge's comment, the Supreme Court refused to consider the matter.

This is not a case of the court commenting on the credibility of the witnesses or a fact in controversy, the weight to be given to evidence, or expressing an opinion, nor is the court testifying as a witness. See *Privat, supra.* The court's remarks were nothing more than an attempt to discover if any juror was acquainted with Toof and, if so, whether he or she could be a fair and impartial juror. We also note that no objection was raised to the judge's comments at the time, that Toof's counsel in his opening statement told the jury that Toof would testify, and that Toof testified. There is no indication that the court's comments compelled Toof to make the choice to testify. We conclude that no prejudice and no error occurred.

*Ineffective Assistance of Counsel.*

The Sixth Amendment to the U.S. Constitution guarantees every criminal defendant the right to effective assistance of

counsel. To state a claim of ineffectiveness of counsel as violative of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and thereby obtain reversal of a conviction, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Sims*, 258 Neb. 357, 603 N.W.2d 431 (1999).

Toof submits that trial counsel's failure to object to the court's comments during voir dire constituted ineffective assistance of counsel. Given our conclusion in this opinion, no prejudice occurred, and this assignment of error is without merit.

Toof also submits that trial counsel failed to call a "key" witness, contrary to Toof's express wish to do so. Toof refers us to the testimony adduced at the postconviction hearing. As previously stated herein, we do not consider the record from that hearing as properly before us.

Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. *State v. Thomas*, 6 Neb. App. 510, 574 N.W.2d 542 (1998). We do not address this error as it was not presented to the trial court, and the record we have is inadequate to determine or examine the assigned error. When an issue has not been raised or ruled on at the trial level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995).

*Sentence.*

Toof argues that it was error to sentence him to a term of incarceration instead of a term of probation. The district court's sentence was within the range of permissible penalties provided for by § 28-931. A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and

unfairly deprive a litigant of a substantial right and a just result. *State v. Bensing*, 249 Neb. 900, 547 N.W.2d 464 (1996). Whether the sentence imposed is probation or incarceration is a matter within the discretion of the trial court, and a judgment denying probation will be upheld unless the trial court abuses its discretion. *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992); *State v. Alford*, 6 Neb. App. 969, 578 N.W.2d 885 (1998).

The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances of the defendant's life. *State v. White*, 256 Neb. 536, 590 N.W.3d 863 (1999); *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999). In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *White, supra*; *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999).

We have reviewed Toof's personal and criminal history and the record of the sentencing hearing. Toof was sentenced within the statutory limit, and the record reveals no abuse of discretion.

## CONCLUSION

We do not address Toof's assignment of error regarding ineffective assistance of counsel. Finding no merit to his remaining assignments of error, we affirm.

AFFIRMED.