STATE OF NEBRASKA, APPELLEE, v. ROBERT P. CLARK, APPELLANT.

342 N.W.2d 366

Filed December 23, 1983. No. 82-839.

Steven D. Keist of Berry, Anderson, Creager & Wittstruck, for appellant.

Paul L. Douglas, Attorney General, and G. Roderic Anderson, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Defendant-appellant, Robert P. Clark, was charged in an information filed September 2, 1981, in eight counts: count I - intentionally causing serious bodily injury to Joel Pauley (assault in the first degree as defined in Neb. Rev. Stat. § 28-308 (Reissue 1979)); count II - using a knife or other deadly weapon in the commission of the felony assault described in count I (in violation of Neb. Rev. Stat. § 28-1205 (Reissue 1979)); count III - intentionally causing serious bodily injury to Steven Wilson; count IV - using a knife or other deadly weapon in the commission of the felony assault on Steven Wilson; count V - intentionally causing serious bodily injury to James Winner; count VI - using a knife or other deadly weapon in the commission of the felony assault on James Winner; count VII - intentionally engaging in conduct constituting a substantial step in a course of conduct intended to culminate in his

commission of the crime of intentionally causing serious bodily injury to Jay D. Smith (attempted assault in the first degree as defined in Neb. Rev. Stat. § 28-201(1)(b) (Reissue 1979)); count VIII - using a knife or other deadly weapon in the commission of his attempted assault in the first degree on Jay D. Smith.

Each count contained a further allegation that defendant had been twice convicted of earlier felonies and was therefore an habitual criminal. All counts alleged that the events had occurred on June 25, 1981. On the State's motion this case was joined for trial with the case of *State v. Zalme, post* p. 61, 342 N.W.2d 373 (1983). Both defendant Clark and defendant Zalme specifically agreed to this joinder, over the objection of counsel for defendant Clark. The cases were properly joined for trial pursuant to Neb. Rev. Stat. § 29-2002 (Reissue 1979), and no issue is raised on this appeal on this point.

Jury trial was held and defendant was found guilty on all counts by a jury verdict returned on September 20, 1982. In a later hearing the court found Clark to be an habitual criminal. Defendant was sentenced to a term of from 20 to 40 years on each of counts I, III, and V; to terms of from 10 to 15 years on each of counts II, IV, and VI; to a term of from 10 to 12 years on each of counts VII and VIII. All the sentences were to run consecutive to each other, and all were consecutive to the sentence defendant was serving at the time of the offenses in this case.

Defendant assigns four errors, alleging that the trial court erred (1) in failing to appoint different counsel for defendant at defendant's request; (2) in denying defendant's motion for a continuance of the trial; (3) in overruling defendant's motion to dismiss counts I, II, VII, and VIII, and in permitting such counts to go to the jury; and (4) in refusing to allow defendant the use of a certain ombudsman's report.

Evidence was adduced before the jury, which, if believed, established the facts hereinafter set out,

beyond a reasonable doubt. At about 7 p.m. on June 25, 1981, Joel Pauley, Steven Wilson, James Winner, and Jay Smith were working as state correction officers in various locations at the Nebraska State Penitentiary. Since each of the officers was working in the inmate population, none was armed. Pauley was working in the penitentiary library. Defendant Clark and John Zalme (defendant in *State v. Zalme, supra*), together with other penitentiary inmates whom Pauley could not identify, came toward Pauley. Clark had a bar in his hand. This bar was later determined to be a solid iron bar, 27 inches long and seven-eights of an inch in diameter. Pauley wheeled around and put his back to the door and bookcase. Zalme was right in front of Pauley, and Clark was standing close in and right behind Pauley. Zalme stabbed Pauley with a knife in the left upper quadrant of his abdomen, penetrating the abdominal wall and into the bowel. The knife was a crude, "homemade" weapon, 9 inches long with a 4½-inch blade, 1 inch in width at the hilt, and curving to a point. The knife was extremely sharp.

Pauley then ran out the door of the library, calling for help. Other guards assisted him, and he was taken to a hospital. His wound was described by the treating doctor as so serious that if it had not been treated it would have almost certainly led to death.

At the time of the above-stated events, Steven Wilson was working in the yard at the penitentiary. He saw Joel Pauley running from the library area. Pauley said he had been stabbed. Wilson ran toward the library in an effort to lock it, but ran into defendant Clark and Zalme before he could reach the library. Defendant Clark asked Wilson if he "would like some of the same." Officer Wilson ran into the gymnasium area, followed by defendant Clark and Zalme. Defendant Clark had a pipe raised above his head and was swinging at Wilson. Wilson fell in the middle of the basketball floor in the gymnasium. Wilson was stabbed by Zalme at

least four times with a knife. Wilson escaped, and another inmate helped him to the prison hospital. Treatment by the doctor disclosed major stab wounds, including one 4 inches in depth into the back of his neck, and one from his back into his chest. Wilson received 11 pints of blood in transfusion—his total blood supply plus 1 pint.

As Wilson fell to the floor of the gymnasium, he saw Officers James Winner and Jay Smith seated in the bleachers adjacent to the basketball floor. As Officer Winner started to radio for help, defendant Clark pointed his iron bar at the two officers and told them to sit down or they would get the same treatment. Clark said to both officers, "On second thought, we'll kill you now." Officer Smith ran and escaped as defendant Clark came toward Winner. Clark swung his bar at Winner's head. Winner raised his hand to deflect the bar, but the bar broke his hand and damaged his upper biceps. Winner ran down the bleachers into Zalme, who stabbed him four times. Winner also escaped, and at the hospital a doctor treated the four stab wounds, one of which was just below his collarbone into his chest from the front. The other three wounds were inflicted from the back. The knife penetrated from the back through Officer Winner's kidney and into his abdominal cavity. Winner required 9 pints of blood. His wounds presented a substantial risk of death to him.

Additional evidence on behalf of the State connected defendant Clark and Zalme with the weapons used to injure the officers, including statements by Clark and Zalme as to the location of the weapons. Neither defendant Clark nor Zalme testified in this case.

As to defendant Clark, it is obvious that the evidence directly involves him in the charges set out in counts III, IV, V, and VI—the assaults with a deadly weapon on Officers Wilson and Winner. Indeed, de-

fendant does not attack the sufficiency of the evidence with regard to those counts.

Concerning counts I and II (the knife attack on Pauley by Zalme), the evidence is sufficient to show that defendant Clark, armed with an iron bar, and Zalme approached Pauley together and that defendant Clark was standing very close to Pauley as Zalme stabbed Pauley. The trial court properly instructed the jury, by an instruction tailored after NJI 14.12, that one who aids or abets another in an unlawful act may be prosecuted and punished as if he were the principal offender. The evidence is overwhelming in this case that defendant Clark and Zalme participated together in an orgy of stabbing and wounding, resulting in serious injuries to three prison guards, in a totally senseless series of violent incidents. The trial court properly instructed the jury as to aiding and abetting criminal conduct, as provided in Neb. Rev. Stat. § 28-206 (Reissue 1979), and there was sufficient evidence for the jury to convict defendant Clark of the crimes set out in counts I and II.

With regard to counts VII and VIII the evidence is undisputed that after the attack on Officer Wilson the defendant Clark made grossly obscene remarks to Officers Smith and Winner, who were seated in the gymnasium, and directly stated to them, "On second thought, we'll kill you now." These words were accompanied by defendant Clark, with his iron bar in his hand, going toward Smith and Winner. When these words and this conduct of defendant Clark are coupled with the surrounding facts—that is, the beating and stabbing of Officer Wilson occurring before the guards' eyes—it is clear that defendant Clark is guilty of conduct which, as charged in count VII, "under the circumstances as he believed them to be, constituted a substantial step in a course of conduct intended to culminate in his commission of the crime of intentionally or knowingly causing serious bodily injury to Jay D. Smith." It

is obvious that the only thing that saved Officer Smith from being stabbed or beaten was his escape while defendant Clark and Zalme were occupied in the stabbing and beating of Officer Winner. Defendant was properly charged and convicted pursuant to § 28-201(1)(b) as to counts VII and VIII.

The trial court did not err in overruling defendant's motion to dismiss counts I, II, VII, and VIII, and in submitting those counts to the jury.

The primary thrust of defendant Clark's appeal rests on his allegation that he was deprived of effective counsel because of the court's refusal to appoint different counsel for defendant at defendant's request.

In this connection the record shows the following. On July 2, 1981, James L. Foster, a deputy public defender from the office of the Lancaster County public defender, was appointed by the court to represent defendant Clark. On showing that the public defender had also been appointed to represent John Zalme, a codefendant, the court permitted James L. Foster to withdraw, and on July 22, 1981, appointed Stephen K. Yungblut to represent defendant. On July 29, 1981, in open court, defendant requested Mr. Yungblut to withdraw, apparently for the reason that Mr. Yungblut had been a member of the Lancaster County attorney's office at an earlier time when defendant had been prosecuted for a crime. Defendant's request was granted, and Stanley Cohen was appointed on the same day to represent defendant.

On September 30, 1981, Mr. Cohen filed a motion to withdraw as counsel, for the reason that defendant Clark "no longer desires his services." Hearing was held on this motion on October 7, 1981. Defendant stated to the court, "We just got different views on the case, you know. And we ain't getting along that good. . . . I feel long as I'm not paying him, you know, long as I'm not paying him, he's court-appointed, that I feel there's conflict right there. . . .

I just feel I'm being discriminated against because I'm a convict, and I ain't got no money. . . . I told him when I first met him I didn't trust him. I don't trust nobody in the system because I ain't got no money.''

The trial court advised defendant that Mr. Cohen was a competent lawyer, and suggested defendant confer with Mr. Cohen to see if they could work things out. The private conference lasted 45 minutes, defendant then advised the court that he could work with Mr. Cohen, and the motion to withdraw was denied.

On February 1, 1982, defendant appeared again before the court with his court-appointed counsel for hearing on the State's motion to consolidate defendant's trial with the trial of John Zalme. Mr. Cohen advised the court that defendant wanted the two cases tried together, although Mr. Cohen personally opposed the joinder, and that defendant was acting against his attorney's advice. John Zalme and his counsel wanted the cases joined. As stated above, joinder was granted.

The defendant filed a handwritten motion on May 17, 1982, requesting an order dismissing Mr. Cohen. At the hearing on said motion on July 8, 1982, the defendant Clark also presented to the court another handwritten motion which stated that a ''personality conflict'' had developed between defendant and his lawyer and that Mr. Cohen ''is not compatible with me as a counsel, and this tense relationship is aggravated by his defense plan.'' Defendant also complained that Mr. Cohen would not tell him what was contained in an investigative report prepared by the state ombudsman's office. Defendant also complained about lack of communication with Mr. Cohen. Evidence was presented at this hearing by defendant. Defendant was advised that his counsel could not release the contents of the investigative report because of a court order restraining him from doing so. (This report and its effect are discussed

below.) Defendant further stated to the court that he was not asking that another attorney be appointed and that, while he would accept another attorney, defendant would be willing to represent himself. The court found that good cause had not been shown for the discharge of Mr. Cohen and the appointment of different counsel. The court gave the defendant the option of discharging Mr. Cohen and representing himself or permitting Mr. Cohen to continue to represent him. Defendant chose to represent himself, after inquiry by the court as to defendant's knowledge of the charges against him and the possible penalties.

At the same hearing codefendant Zalme also requested that his court-appointed counsel be discharged. This request was also granted, with the understanding that the codefendant would have to represent himself in the trial. The court then directed both counsel to attend the trial and every proceeding as adviser to his respective defendant. Defendants' oral motions for continuances were granted, and the case set for trial on September 13, 1982.

On September 8, 1982, defendant Clark and his codefendant filed identical written motions for further continuance. These motions were denied. The trial began on September 13, 1982, and went to conclusion, with Mr. Cohen acting throughout as adviser to defendant.

The facts recited above are set out at some length only to show how these facts fit in with decided cases on this issue. As stated in *State v. Jones*, 213 Neb. 1, 9, 328 N.W.2d 166, 172 (1982): "The record reflects a breakdown of communication between defendant and his counsel and raises a strong inference that defendant's requests for new counsel were based on mistrust of all lawyers and an attempt to delay the proceedings.

"The law in this state is well settled that the right of an indigent defendant to have counsel does not

give him the right to be represented by counsel of his own choosing, and mere distrust of, or dissatisfaction with, appointed counsel is not enough to secure the appointment of substitute counsel. *State v. Fallis*, 205 Neb. 465, 288 N.W.2d 281 (1980). The standard for determining whether or not counsel for defendant in a criminal prosecution has provided adequate representation requires that trial counsel perform at least as well as a lawyer with ordinary training and skill in the criminal law in his area and that he conscientiously protect the interests of his client. *State v. Shepard*, 208 Neb. 188, 302 N.W.2d 703 (1981)."

There is no evidence presented in this case that the counsel appointed and refused was not competent. The record raises an inference in this case that defendant had not really wanted counsel, but, rather, wanted to so conduct himself as to be able to complain that he was not afforded counsel. As well said by the trial court in this case, "Defendants are not permitted to utilize the constitutional right to counsel to manipulate or obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." In this case there has been no deprival of counsel. As stated in *State v. Blunt*, 197 Neb. 82, 89, 246 N.W.2d 727, 732 (1976), "An indigent defendant who refuses to accept offered counsel without justifiable reason and elects to proceed pro se has not been deprived of his constitutional right to counsel." Defendant has not shown any justifiable cause for refusing to accept counsel offered to him. The trial court did not err in refusing to appoint new and different counsel for defendant.

It should be noted that during the trial, Mr. Cohen acted as technical adviser, and after the trial was permitted to withdraw and present counsel was appointed by the court to perfect this appeal.

With regard to the alleged error of the trial court in refusing to grant defendant a further continuance

of trial, the law is settled that " '[a] motion for a continuance is addressed to the sound discretion of the court, and in the absence of a showing of an abuse of discretion, a ruling on a motion for a continuance will not be disturbed on appeal.' " *State v. Davis*, 199 Neb. 165, 167, 256 N.W.2d 678, 680 (1977). The incidents resulting in the case happened on June 25, 1981. A preliminary hearing was held. A plea in abatement was filed and ruled upon. There were specific waivers by defendant on two occasions to the application of the speedy trial rule. On July 8, 1982, defendant's motion for a continuance was granted, and the trial date was set, at that time, for a date more than 2 months in the future. Contrary to the general contentions of counsel on appeal, the case was not really involved, and further time was not needed to defend the case even when that defense was conducted pro se. There were no difficult questions of law. The attacks in question, beyond any doubt, constituted the intentional inflicting of wounds causing "serious bodily injury"; there is no hint in the testimony at the trial, or in the brief on appeal, that any person other than Zalme inflicted the knife wounds and that defendant herein was Zalme's willing partner in these crimes. The case presents, as so many such cases do, facts which the ablest counsel in the world cannot change, and those facts render defendant guilty. The trial court did not abuse its discretion in denying any further continuance of the trial.

Defendant's last assignment of error is that the trial court erred in failing to allow defendant the use of an investigative report prepared by the state ombudsman. This report came to light when James Foster, then acting as counsel for Zalme, filed a motion to take the deposition of the state ombudsman, which motion was joined in by Mr. Cohen, counsel for defendant Clark, at a hearing on February 1, 1982. This motion was denied, but the court authorized both prosecution and defense counsel to

examine the 237-page report. The court later ordered counsel not to reveal to defendants Robert Clark and John Zalme matters set out in the report.

The report itself was entitled "The Assault of an Inmate and the Near-Fatal Stabbing of Four Prison Guards on June 25, 1981, Could Have Been Prevented." The trial court, in an excess of caution, authorized counsel to examine the report. As its title would indicate, the main objective of the report was an effort to determine if the assaults could have been avoided by prison authorities. In the report, named inmates told of threats on their lives and sexual pressures by other inmates planning on taking over a cell block by killing guards. The inmates stated that the assaults could have been avoided if the authorities had heeded the inmates. The trial court concluded that to release the report beyond the attorneys in the case "could pose an unreasonable risk of serious bodily harm or even worse to individuals at the penitentiary or who have been at the penitentiary . . . ."

On appeal defendant contends that since he was representing himself after Mr. Cohen was discharged, defendant had the right to have any information which an attorney representing him would have had. We are cited to no cases so holding.

The trial court examined the report, trial counsel (before his discharge) examined the report, present counsel has had the opportunity to examine the report, and this court has examined the report. There has been no showing to this court that there is any specific information in the report that would work to defendant's benefit—either in the determination of his guilt or innocence or in his sentence. We do not find any such evidence on our examination. The effect of the report, had it had any effect in this case (which it did not), should have been to defendant's further detriment. The trial court, in the exercise of its discretion, properly refused to permit defendant to examine the report. The probability of harm to

inmates and further trouble in the prison far outweigh any possible benefit to defendant.

None of the points raised by defendant on this appeal has merit. There being no error, the judgment is affirmed.

AFFIRMED.