STATE OF NEBRASKA, APPELLEE, V. CLIFFORD E. RICHARDSON, APPELLANT.

417 N.W.2d 24

Filed December 24, 1987.   No. 87-454.

David A. Bergin, for appellant.

Robert M. Spire, Attorney General, and Lisa D. Martin-Price, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

The defendant was convicted of third degree assault under Neb. Rev. Stat. § 28-310 (Reissue 1985) and sentenced to 30 days' imprisonment. Upon appeal to the district court the judgment was affirmed. Upon appeal to this court the defendant contends the evidence was insufficient to support the conviction.

The record shows that the defendant's version of the facts is that the victim, Laura Skiver, arrived at his home around 1:15 p.m. on September 5, 1986, to give him some chair covers in exchange for some pieces of jewelry. The victim had a can of beer with her when she arrived, and then asked for more to drink. She then proceeded to consume homemade wine, along with creme de menthe and Southern Comfort. She continued to drink until approximately 3 p.m. and became intoxicated. At that time, when she attempted to stand up from a platform rocking chair, she fell forward onto the coffee table, hitting her face. She then proceeded to vomit on the defendant's carpet. The defendant retrieved a towel and cleaned her up. He could tell she was sick, and he could not do anything with her, so he

went outside and continued working. Approximately 3 hours later the defendant went back inside, got the victim up from the floor, and told her she had to leave because he had a date.

The defendant testified that as the victim awakened, she thought the defendant was her husband and said, "Leave me alone, Bob!" Then she realized she was not at home and said, "Oh my God! Bob's gonna kill me!" She stumbled to the bathroom, and the defendant heard her knock something over. She then left at approximately 6:15 p.m.

At 7:15 p.m., just as the defendant was leaving, the victim returned and asked if she had left her billfold and checkbook, which she found beside the coffee table. She asked the defendant what had happened, and he told her she had gotten drunk. The defendant noticed a bump on her lip and a bruise on her face. The defendant testified he had nothing to drink that day.

The victim's testimony described a different series of events. Skiver testified that she had been friends with the defendant for $3^{1}/_{2}$ years and that during that time he had made verbal suggestions of a sexual nature. During her conversation with him that day, she testified, he again made verbal suggestions but that it did not surprise her because "[t]hat's just being Cliff." She did not have anything to drink prior to arriving at his house, but testified she drank a quart of the homemade wine and possibly some sloe gin at the defendant's home. The defendant also was drinking.

The victim testified that the defendant wanted to dance with her, and kiss and hug her, but that she rejected him. The defendant then hit her with his hand on the right side of her face and pushed her to the floor. She left the defendant's home at approximately 3:30 p.m. and went to tell her husband what had happened. Later, she returned to the defendant's home to find her wallet, but she did not recall the time because she was still in a state of shock after being hit. She further testified that her husband did not like to have her go to the defendant's home and that she knew her husband would disapprove of her visit that day.

Robert Skiver, the victim's husband, testified that his wife came to him between 3:30 and 4 p.m. that day and that she had

a black eye, fat lip, and bruise on her cheek. He took her home and then went to see John Richardson, a nephew of the defendant. Robert Skiver told Richardson that the defendant had hit his wife and that Skiver was going to go after the defendant. Richardson talked Skiver into calling the sheriff instead. Skiver testified that he called the sheriff around 5 or 5:30 p.m.

John Richardson testified that he received a visit from Robert Skiver somewhere between 5:30 and 7 p.m. Skiver was carrying a knife and told him that he wanted to do physical violence to the defendant.

Sheriff William Cemer testified that he received a call from Robert Skiver at around 7 p.m. and then met with him. Later that evening, he observed the victim's bruise marks and black eye and that she was intoxicated. The sheriff did not take a statement from the victim at that time because she had been beaten up and was intoxicated, and he did not believe she was capable of making a statement.

On September 8, 1986, Cemer took a statement from the victim, at which time she told him that the defendant had made advances toward her and had hit her.

In resolving a challenge to the sufficiency of the evidence to sustain a conviction in a criminal case, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of the explanations, or weigh the evidence. *State v. Charron*, 226 Neb. 871, 415 N.W.2d 474 (1987).

Where a judge serves as the trier of fact in a criminal case, the factual findings will not be disturbed on appeal unless clearly wrong. *State v. Laue*, 225 Neb. 57, 402 N.W.2d 313 (1987). It is not the function of this court to accept one version of the case over another. *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986).

In this case there was direct, corroborated evidence which linked the defendant to the crime and which was sufficient to sustain a finding of guilt beyond a reasonable doubt. The judgment is, therefore, affirmed.

AFFIRMED.