STATE OF NEBRASKA, APPELLEE, V. GREGORY MCCOY, APPELLANT.

421 N.W.2d 780

Filed April 8, 1988.   No. 87-467.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays, for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller, for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BURKHARD, D.J.

GRANT, J.

After trial to a jury in the district court for Lancaster County, the defendant, Gregory McCoy, was found guilty of robbery, in violation of Neb. Rev. Stat. § 28-324(1) (Reissue 1985), and use of a weapon to commit a felony, in violation of Neb. Rev. Stat. § 28-1205(1) (Reissue 1985). The defendant was sentenced on the robbery count to an indeterminate term of incarceration of from 3 to 7 years, consecutive to a sentence already being served by the defendant. The defendant was sentenced on the use of a weapon charge to a term of 1 year, consecutive to the sentence imposed on the robbery charge. The defendant appeals and sets out 11 assignments of error, which may be consolidated into 5, that the district court erred: (1) in overruling the defendant's motion to have effective counsel appointed to replace the attorney appointed to represent defendant; (2) in exercising defendant's peremptory challenges, after defendant refused to do so, by striking the last six jurors called at defendant's trial; (3) in overruling the defendant's motion to dismiss based upon defendant's having been subjected to an "illegal lineup"; (4) in determining the evidence was sufficient to support a finding of

guilty by the jury; and (5) in refusing to place the defendant on probation and imposing an excessive sentence. For the reasons set out below, we affirm.

The record shows that on the evening of September 15, 1986, the victim, David Huebner, a student at the University of Nebraska, was alone in the bedroom of his apartment in Lincoln, Nebraska, while studying. At approximately 8:40 p.m., he heard the door to his apartment open and saw a black man wearing a red handkerchief over his face enter the bedroom. The victim was unable to make any other observation about the person. The intruder announced, "This is a stick-up," and shoved the left side of Huebner's head into the bedroom wall, so that Huebner was unable to see the intruder. The intruder placed a sharp object against Huebner's temple and then took Huebner's wallet from his back pocket. Huebner heard his wallet being opened by a second individual in the apartment, who said, "He has bank cards." Huebner never saw the second intruder. The individual holding Huebner then moved him onto the bed while pressing the sharp object against Huebner's head. After he was tied up by the two intruders, Huebner told them the security code numbers for the two bank cards. Although Huebner was unable to see whether the intruders were writing down the numbers, he did have paper and pencils available in the bedroom. The two men then left the apartment.

Within minutes after the men left, Huebner was able to hop over to the apartment unit directly across the hall. The victim's neighbor then called the police. Lt. John D. Packett of the Lincoln Police Department was on routine patrol duty that evening and was informed of the robbery through radio dispatch. At approximately 8:55 p.m., Lieutenant Packett proceeded to an automatic teller machine located at FirsTier Bank at 13th and M Streets in Lincoln. As he approached the bank, Packett saw two black men going into the front door of the bank. Lieutenant Packett followed the men into the bank, saw them at an automatic bank teller machine, and observed the two men engaging in "some type of activity" at the machine. Packett attempted to detain the two men, but they avoided the officer and ran in opposite directions from the bank, leaving a

bank card in the machine. A security guard, who had been observing the two suspects, removed the bank card, which belonged to Huebner, from the machine.

Police Officer Jerome Thraen joined in the chase and followed the defendant. When the officer caught defendant, the defendant threw an object toward a nearby alley. The object was later found to be a billfold. A subsequent search of the defendant's clothing revealed a pocketknife and an item that appeared to be a scalpel. Upon retracing the escape route, Officer Thraen discovered the second bank card belonging to Huebner and a torn piece of graph paper with the word "Frist" and Huebner's security code numbers written on it. The tear on the piece of graph paper appeared to fit the tear on a piece of graph paper in Huebner's apartment.

The second suspect was also apprehended by the police, following a foot chase. A search of the second suspect revealed a steak knife in the suspect's back pocket, $8 in cash, which was the amount of money Huebner testified was in his wallet, and a paycheck stub which belonged to Huebner.

In his first assignment of error, defendant contends that the trial court erred in overruling the defendant's motion to have effective counsel appointed to replace the attorney already appointed to represent the defendant. That attorney had been permitted to withdraw as counsel, at defendant's request. Defendant contends that the trial court should have sustained the defendant's "request" for effective appointment of counsel, rather than requiring the defendant to proceed either pro se or with the assistance of counsel with whom the defendant did not have a "meaningful attorney-client relationship."

The record reflects that prior to trial the defendant filed a motion to dismiss his counsel, alleging that the public defender appointed to defend him was "racist, vindictive (virulent), and has stated his ardent belief in the defendant's guilt." The motion did not contain a request for alternative counsel. The motion was overruled on January 9, 1987. On January 26, 1987, at defendant's request, the public defender appointed to represent defendant, Harry Moore, was given leave to withdraw as defendant's counsel, and the same public defender was appointed as standby counsel. Moore was present throughout

the trial, but did not actively participate.

We first note that while the sixth amendment guarantees the indigent defendant the right to effective assistance of counsel, the sixth amendment does not guarantee a "meaningful relationship" with his or her counsel. *Morris v. Slappy*, 461 U.S. 1, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983). The right of an indigent defendant to counsel does not include the right to counsel of the defendant's own choice. *State v. Hoffman*, 224 Neb. 830, 401 N.W.2d 683 (1987); *State v. El-Tabech*, 225 Neb. 395, 405 N.W.2d 585 (1987).

A defendant's mere distrust of, or dissatisfaction with, his or her attorney is not a sufficient reason to require appointment of substitute counsel. *State v. Clark*, 216 Neb. 49, 342 N.W.2d 366 (1983); *State v. Blunt*, 197 Neb. 82, 246 N.W.2d 727 (1976).

The defendant has failed to demonstrate a justifiable reason for refusing to accept the services of his court-appointed attorney. An indigent defendant who refuses the services of his court-appointed counsel and elects to proceed pro se has not been denied effective assistance of counsel. *State v. Clark, supra; State v. Blunt, supra.* The defendant refused the services of his attorney, elected to proceed pro se, and was further provided, under protest, with the services of standby counsel. Defendant's first assignment of error is without merit.

In his second assignment of error, the defendant contends that the district court erred in striking the last six jurors called. Defendant argues that the court "should have randomly struck six jurors on behalf of the defendant." Brief for Appellant at 16. In his brief, the defendant submits that, although defendant waived any objection to any particular juror, in effect, the judge should act as an advocate for defendant and randomly strike jurors.

The record reflects that prior to jury selection, the defendant announced that he would not participate in the proceedings. Prior to the striking of any jurors, the court informed the defendant that the court would strike the last six jurors called in the event the defendant did not exercise his peremptory challenges. The State struck one of the last six jurors called. The defendant was asked on each strike whether he desired to strike a juror and declined to do so. The last six jurors remaining,

after the State had stricken one of the six last called, were stricken from the prospective jury one at a time. At the close of the State's evidence, the defendant requested a mistrial because the jury was selected in a prejudicial manner. The motion was denied. At the close of all the evidence, the defendant renewed the motion, which was denied a second time.

A mistrial is generally granted at the occurrence of a fundamental failure preventing a fair trial. *State v. Johnson*, 226 Neb. 618, 413 N.W.2d 897 (1987). The failure to timely object constitutes a waiver of the objection on appeal. *State v. Archbold*, 217 Neb. 345, 350 N.W.2d 500 (1984).

Furthermore, a party who fails to challenge prospective jurors for disqualification and does not use his peremptory challenges to remove such jurors from the panel waives any objection to their selection. See *Bittner v. Miller*, 226 Neb. 206, 410 N.W.2d 478 (1987). Since the defendant was advised of the consequences of failing to exercise his peremptory challenges, elected to waive that right, and made no timely objection, this assignment of error is without merit. To hold otherwise would obviously establish a challenge from defendant that the trial judge had stricken the wrong jurors in randomly reducing the prospective jury to a trial jury.

In his next assignment of error, defendant contends that the trial court erred in overruling the defendant's motion to dismiss which was based upon the defendant's having been subjected to an "illegal lineup." On January 28, 1987, the defendant filed a motion to dismiss, alleging that the victim's neighbor who had called the police at the victim's request had been brought to the jail to identify the defendant while the defendant was in custody. Defendant contends the neighbor posed as a police officer at that time. Testimony at trial was to the effect that this alleged incident never took place and that the individual whom the defendant believed to be the victim's neighbor was a police officer who was present when a handwriting test was administered to the defendant. Furthermore, the neighbor never identified the defendant during the course of the trial, and no identification from any lineup was offered into evidence. This assignment of error cannot be comprehended and is without merit.

In his final assignments of error, the defendant contends that the evidence was not sufficient to support the defendant's convictions and that the district court erred in imposing an excessive sentence and refusing to place the defendant on probation.

In determining whether there is sufficient evidence to sustain a conviction in a criminal case, this court will not resolve conflicts of evidence, evaluate explanations, pass on the credibility of witnesses, or reweigh the evidence presented to the jury. *State v. Lane*, 227 Neb. 687, 419 N.W.2d 666 (1988); *State v. Richardson*, 227 Neb. 274, 417 N.W.2d 24 (1987). The verdict in a criminal case must be sustained if the evidence, viewed most favorably to the State, is sufficient to support the verdict. *State v. Lane, supra*. Circumstantial evidence is sufficient to support a finding of guilty if the evidence and reasonable inferences drawn from the evidence establish the defendant's guilt beyond a reasonable doubt. *State v. Miller*, 226 Neb. 576, 412 N.W.2d 849 (1987); *State v. Donnelson*, 225 Neb. 41, 402 N.W.2d 302 (1987).

Although the victim was unable to give an eyewitness identification of the defendant, the jury could find from the evidence presented at trial that the defendant committed the charged offenses. A knife found in the possession of the defendant was similar to that used during the course of the robbery, as testified to by the victim. The jury could have concluded that footprints found near the victim's apartment were made by the shoes worn by the defendant. The defendant was identified by police in the bank while attempting to use the automatic teller machine. The victim's bank card was left in the machine used by the defendant. A retracing of the flight path taken by the defendant revealed a second bank card belonging to the defendant and a torn piece of graph paper with the word "Frist" and the victim's security code numbers written on it. A jury could conclude that the paper was torn from a piece of graph paper found in the victim's apartment. There was ample evidence, if believed, to support the jury's finding of guilt.

As to defendant's excessive sentence claim, in the absence of an abuse of discretion, an order denying probation and imposing a prison sentence within the statutory limits will not

be disturbed on appeal. *State v. Lane, supra*; *State v. Wood*, 220 Neb. 388, 370 N.W.2d 133 (1985). The record shows that the defendant has a history of prior misdemeanor convictions. Robbery is a Class II felony, which is punishable by a minimum of 1 year's imprisonment and a maximum of 50 years' imprisonment. The use of a weapon to commit a felony is a Class III felony, which is punishable by a minimum of 1 year's imprisonment and a maximum of 20 years' imprisonment. Both are violent crimes. Defendant's sentences were well within those limits. We find no abuse of discretion in the sentences imposed on the defendant.

The judgment of the district court is affirmed.

AFFIRMED.