STATE OF NEBRASKA, APPELLEE, V. RUDY ARTHUR ROSALES, APPELLANT.

521 N.W.2d 385

Filed August 30, 1994.   No. A-93-774.

Sandra Hernandez Frantz for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

IRWIN, MILLER-LERMAN, and MUES, Judges.

IRWIN, Judge.

Rudy Arthur Rosales was convicted in the district court for Lancaster County of theft by unlawful taking, in violation of Neb. Rev. Stat. § 28-511 (Reissue 1989). The property taken

had a value of $9,678. At an enhancement hearing, Rosales was found to be a habitual criminal as defined in Neb. Rev. Stat. § 29-2221 (Reissue 1989) and was sentenced to 15 to 20 years' imprisonment. Rosales has appealed to this court, claiming, among other things, that his court-appointed standby counsel was ineffective and that Rosales was denied adequate access to a law library and other tools required for his pro se trial defense. After reviewing the record and the applicable law in this case, we find that Rosales' claims lack merit, and accordingly, we affirm the decision of the court below in all respects.

### FACTUAL BACKGROUND

On April 8, 1992, Lincoln real estate agent Rhonda Novak received a phone call from defendant, who identified himself as Rudy Lopez. Defendant told Novak that he was looking to buy a home for around $200,000 and that he wished to purchase it quickly. That evening, Novak and a coworker, Larry Geiger, met with defendant and Julie Engebretson, whom defendant introduced as his wife, at the Hilton Hotel in Lincoln. During the meeting, defendant told Geiger that he was looking for an "upper-scale" home in Lincoln because he had a "capital gain situation." Defendant also told Geiger that he would look only at existing homes and that he was not interested in newly constructed homes. Before the meeting ended, a time was agreed upon when Geiger would show the defendant five or six homes the next day.

In the morning, Geiger picked up defendant and Engebretson at the Hilton and proceeded to show them four or five homes. When Geiger attempted to show them new homes, they refused to exit the car or look at the homes.

Between 2 and 3 o'clock that afternoon, Geiger showed the couple a home belonging to Cynthia and Rick Rohrs. Cynthia Rohrs left the home shortly after they arrived. While Geiger was showing the upstairs level of the home, defendant left for approximately 5 minutes, stating that he wanted to look at a room that would be suitable for an office. When defendant met up with Geiger and Engebretson, defendant stated that he was feeling ill and requested Geiger to take them back to the Hilton.

Geiger complied with the request. When Geiger later phoned the Hilton to see if defendant was feeling better, he was informed that defendant and Engebretson had checked out.

The day after the defendant was shown the Rohrses' house, Cynthia Rohrs discovered several items of jewelry missing from a dresser drawer in her bedroom, including a black onyx ring with six diamonds, a pair of 14-karat gold earring hoops, a pair of cubic zirconia earring studs, a gold cross pendant and chain, a Geneve quartz watch, a gold and diamond tennis bracelet, and a gold herringbone chain.

On April 14, 1992, defendant and Engebretson were arrested at a hotel in Las Cruces, New Mexico, pursuant to a warrant. In a search of defendant's hotel room, police discovered a white box containing jewelry, and also found credit cards bearing the names of Patricia L. McDonald and Regan Dean. Police also confiscated several items of jewelry from defendant's and Engebretson's persons. Among the items of jewelry seized by police were a black onyx ring, gold earring hoops, and a pair of cubic zirconia earring studs, all of which matched descriptions of the jewelry missing from the Rohrses' residence.

In an amended information, defendant was charged in Lancaster County with theft by unlawful taking of property valued at more than $1,500, and was also charged as a habitual criminal.

At defendant's request, the district court appointed Robert G. Hays of the Lancaster County public defender's office to represent defendant. Hays served as defendant's attorney until March 9, 1993, when the court sustained Hays' motion for leave to withdraw. Defendant then moved to proceed pro se. The court granted this motion and appointed Hays as defendant's standby counsel, over defendant's objection.

At trial, Novak and Geiger each identified defendant as the man who represented himself as Rudy Lopez and to whom Geiger had shown homes on April 9, 1992. Cynthia Rohrs identified the black onyx ring, the gold earring hoops, and the cubic zirconia earring studs as matching those that were missing from her home. The State called a gemologist to testify that the replacement value of all of the jewelry missing from the Rohrses' home exceeded $9,000.

Defendant called only one witness to testify. That witness was Paula Blackman Thrasher, a gemologist from Lincoln. Thrasher testified that the onyx ring, the earring hoops, and the cubic zirconia studs had a combined street value of between $100 and $130, and a combined retail value of between $400 and $425.

The jury found defendant guilty of theft by unlawful taking, with the property taken having a value of $9,678. At a later hearing, the court found defendant to be a habitual criminal. Defendant thereafter filed a motion for new trial. At the hearing on the motion, defendant attempted to show that he had inadequate access to the law library while he was incarcerated, that the law library did not contain materials necessary for defendant to present his defense, and that his standby counsel did not "assist" him. Defendant also called Engebretson, who testified that she alone committed the theft. The trial judge denied defendant's motion for new trial, and thereafter sentenced him to 15 to 20 years' imprisonment.

## ASSIGNMENTS OF ERROR

Defendant claims that the district court erred in (1) refusing to appoint new counsel for him when it became apparent that his counsel had a "conflict of interest," (2) limiting the role of his standby counsel, (3) denying his request for additional time in the law library, (4) denying his requests for various "tools . . . to prepare for his own defense," (5) denying his request for continuance, (6) admitting evidence of credit cards found in his hotel room, (7) finding sufficient evidence to convict him, and (8) denying his motion for new trial.

## ANALYSIS

*Conflict of Interest.*

In his first assigned error, defendant claims that the trial court erred in refusing to appoint new counsel for him when his court-appointed counsel developed an alleged conflict of interest.

The record establishes that Hays was appointed as counsel for defendant on May 12, 1992. On March 2, 1993, Hays filed a motion to withdraw as defendant's counsel after defendant informed him that he wished to proceed pro se. On March 9,

defendant filed a motion to proceed pro se. At a hearing on the motions, defendant did not request substitute counsel, and objected to the court's appointing Hays as standby counsel, stating, "I don't particularly need anybody to be on standby at this point. I'd like to exercise the right of representing myself pro se in full by myself as adequate counsel."

The record clearly establishes that defendant invoked his right to represent himself and did not desire substitute counsel. Thus, the court did not "refuse" to appoint substitute counsel for defendant. Rather, the court granted defendant's request to represent himself. In fact, had the court not allowed defendant to represent himself, it would have violated defendant's constitutional right to self-representation. See *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

Defendant also claims that the trial court should have appointed different standby counsel for him once the court became aware of Hays' alleged conflict of interest. At his arraignment, defendant objected to Hays' serving as standby counsel, stating that he had filed a complaint against Hays with the Nebraska State Bar Association and that such complaint gave rise to a conflict of interest for Hays. A copy of the letter defendant sent to the bar association is in the record. In the letter, defendant complains that Hays had "verbally taken sides with the county attorney's office," had cursed defendant, and had told defendant that he could not win. Defendant also states in the letter that he could not trust Hays to "carry out my wishes confidently" and that Hays "never comes see's [sic] me when needed." After a brief investigation, the bar association's Counsel for Discipline dismissed defendant's complaint.

It is well settled that "a defendant's mere distrust of, or dissatisfaction with, his or her attorney is not a sufficient reason to require appointment of substitute counsel." *State v. McCoy*, 228 Neb. 178, 182, 421 N.W.2d 780, 783 (1988). Accord *State v. Clark*, 216 Neb. 49, 342 N.W.2d 366 (1983). In the present case, defendant's complaint to the bar association is merely an expression of his mistrust of, or dissatisfaction with, his standby counsel, and as such, did not require appointment of new standby counsel. Further, defendant's complaint to the

bar association was frivolous. A patently frivolous complaint brought by a defendant against his or her counsel may not, alone, constitute cause for appointment of new counsel or standby counsel. See *Smith v. Lockhart*, 923 F.2d 1314 (8th Cir. 1991). We find defendant's first assigned error without merit.

*Role of Standby Counsel.*

When the trial court appointed standby counsel for defendant, it informed him what the role of his standby counsel would be, stating:

> Mr. Rosales, you have a constitutional right to represent yourself, if you choose to do that. If you do that and I give Mr. Hays leave to withdraw, I will appoint him as standby counsel, which means that he will be present at the times of the hearings for you. It does not mean that he will file motions for you; it does not mean that he will do research for you; it does not mean that he will investigate the case for you; he will simply be available at the time of hearings or trial to advise you.

Defendant claims that it was error for the court to restrict the role of standby counsel. Although the Nebraska Supreme Court has held that the decision of whether to appoint standby counsel for a pro se defendant is left to the discretion of the trial court, *State v. Green*, 238 Neb. 328, 470 N.W.2d 736 (1991), we have been unable to find any precedent in this state outlining the role standby counsel is to perform once he or she is appointed.

In *McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984), the Court briefly discussed the role of standby counsel, stating:

> A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel—even over the defendant's objection—to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals. Participation by counsel to steer a defendant through the basic procedures of trial is permissible . . . .

In a footnote, the court in *Wiggins* indicated that the level of participation by standby counsel should be left to the discretion of the trial court:

> The trial judge may be required to make numerous rulings reconciling the participation of standby counsel with a *pro se* defendant's objection to that participation; nothing in the nature of the *Faretta* right suggests that the usual deference to "judgment calls" on these issues by the trial judge should not obtain here as elsewhere.

465 U.S. at 178 n.8. Other jurisdictions have also recognized that a trial court has discretion over the extent of standby counsel's involvement in a case. See, *People v. Smith*, 249 Ill. App. 3d 460, 619 N.E.2d 799 (1993) (holding that trial judge has discretion to decide nature and extent of standby counsel's involvement); *Commonwealth v. Molino*, 411 Mass. 149, 580 N.E.2d 383 (1991) (holding that trial judge had discretion to appoint standby counsel with any reasonable limitations); *People v. Garcia*, 69 N.Y.2d 903, 508 N.E.2d 929, 516 N.Y.S.2d 194 (1987) (determining that trial court had discretion to allow standby counsel to question defendant at trial); *Contempt in State v. Lehman*, 137 Wis. 2d 65, 403 N.W.2d 438 (1987) (holding that the scope of the duties of standby counsel lies within the discretion of the trial judge); *Cano v. Municipality of Anchorage*, 627 P.2d 660 (Alaska App. 1981) (finding that trial court had discretion to allow advisory counsel to participate actively at trial); *State v. Randall*, 530 S.W.2d 407 (Mo. App. 1975) (holding that trial court has discretionary power over role of standby counsel).

Different rationales have been offered for giving the trial court discretion to limit the role of standby counsel. In *Lehman, supra*, the court found that the purpose of appointing standby counsel is to serve the trial court's interest in having the trial proceed in an orderly fashion. The court thus reasoned that the trial court is in the best position to tailor the scope of standby counsel's duties to serve the court's needs. The court in *Molino, supra*, reasoned that because the trial court has the discretion to determine whether to appoint or deny standby counsel for a pro se defendant, it follows that the trial court also has the discretion to limit standby counsel's role once he or she

is appointed. We find this reasoning persuasive, and we agree that once standby counsel has been appointed for a pro se defendant, the trial court has discretion over the scope of standby counsel's role.

We now turn to whether the trial court abused its discretion in limiting standby counsel's role in this case. " 'A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.' " *State v. Trackwell*, 244 Neb. 925, 931-32, 509 N.W.2d 638, 643 (1994).

Several factors lead us to conclude that the trial court did not abuse its discretion in limiting the role of defendant's standby counsel in this case. First, defendant clearly indicated that he wished to invoke his right to represent himself. In fact, defendant objected to the appointment of *any* standby counsel. For the court to assign standby counsel a more active role under such circumstances could be perceived as an impediment to defendant's right to self-representation.

Second, defendant's record reveals that he is a veteran criminal who has had many experiences in courtrooms, and thus required comparatively little assistance from standby counsel. According to his presentence report, defendant has been arrested over 30 times in his adult life, for offenses including, but not limited to, theft, assault, possession of marijuana, kidnapping, embezzlement, forgery, burglary, and fraud. Defendant has at least 10 prior felony convictions. The trial record from this case shows that defendant was well aware of trial procedures and strategies and that he used them to his advantage.

Third, it is evident that standby counsel provided assistance to defendant when requested to do so. The record shows that defendant consulted with standby counsel on numerous occasions at hearings and at trial. In fact, in his closing argument to the jury, defendant stated that his standby counsel had been "extremely helpful" to him. In light of this and the above-mentioned factors, we conclude that the trial court did not abuse its discretion in limiting the role of standby counsel in this case.

*Access to Law Library.*

In his third assigned error, defendant claims that he was denied adequate access to the law library while he was incarcerated prior to trial. We find that this assigned error is unsupported by the record. At the motion for new trial, an employee of the Lancaster County Corrections Department testified that inmates, including defendant, were allowed 15 minutes per day, 5 days per week, to select books from the law library. Once an inmate had selected the books, he or she could check those books out of the library for 2 additional hours each day. The trial court found that defendant had had 124 hours of research time, in addition to the 15 minutes per day that he was allowed to select books from the law library, and concluded that defendant had adequate access to the law library. We agree with the trial court's findings, and accordingly we reject this assigned error.

*Preparation Tools.*

Defendant next claims that the trial court erred in denying his request for trial preparation tools. In his motion to proceed pro se, defendant requested the court to provide defendant with typing paper, access to a typewriter or word processor, pencils, carbon paper or access to a copier, legal pads and file folders, envelopes and postage, access to long distance telephone operators, free local phone calls, a legal researcher, a private investigator, and expert witnesses. The court granted defendant's motion with regard to the typing paper, pencils, carbon paper, and legal pads, and denied defendant's other requests. However, the record reveals that the court later granted defendant's motion to obtain an expert witness at the county's expense and that it accommodated defendant by allowing him to take depositions of witnesses before and during trial.

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). In *State v. Walle*, 182 Neb. 642, 156 N.W.2d 810 (1968), the court addressed a situation nearly identical to the one

presented in the present case. In *Walle*, the court appointed the public defender as a " 'technical adviser' " for the defendant after the defendant had elected to proceed pro se. *Id*. at 644, 156 N.W.2d at 811. The defendant, who was incarcerated awaiting trial, presented a pretrial motion for a private cell for purposes of research and study, access to a typewriter, carbon paper, legal pads, and a daily transcript of all trial testimony. The trial court denied the defendant's motion, and the Supreme Court affirmed. The court held that a defendant has no absolute right to be placed in a private cell; to be given access to a typewriter, carbon paper, legal pads, and access to a law library; or to be furnished with a daily transcript of the testimony. In light of this language and the particular facts of the present case, we cannot find that the trial court erred in denying defendant's motion for the materials requested.

## *Failure to Grant Continuance.*

■ Defendant claims that the trial court erred in failing to grant his oral motion for continuance made on May 17, 1993, the date trial was scheduled to begin. The decision of whether to grant a continuance in a criminal case is addressed to the discretion of the trial court, and that court's ruling will not be disturbed on appeal absent an abuse of discretion. *State v. Valdez*, 239 Neb. 453, 476 N.W.2d 814 (1991).

The record establishes that the trial was originally scheduled to take place during the March 29, 1993, jury term, but the defendant successfully moved the court to continue the case until the May 10 jury term. Defendant's second motion for continuance was based on his alleged lack of adequate trial preparation materials. As we noted above, defendant's rights to such materials were met. In addition, the record indicates that defendant was originally released on bond while he was awaiting trial and that he left the state of his own volition for over 6 months while released on bond. We find that the trial court did not abuse its discretion in denying defendant's second motion for continuance.

## *Evidence of Credit Cards.*

During the trial, the court granted defendant's motion in limine wherein defendant requested the court to advise the

prosecution not to bring in evidence of stolen property found in defendant's hotel room other than the property involved in the crime for which defendant was being tried. Thereafter, the State called Officer Gilbert Apodaca of the Las Cruces, New Mexico, Police Department to testify. The State proceeded to ask Officer Apodaca about the credit cards seized from defendant's hotel room. Defendant objected to the question, at which point the State argued that the credit cards were going to be used to show that defendant used a false name when he committed the crime in the instant case. The court overruled defendant's objection, and Officer Apodaca proceeded to testify that the names on the credit cards were Patricia L. McDonald and Regan Dean. Defendant claims that the trial court erred in admitting Officer Apodaca's testimony regarding the credit cards, apparently relying on Neb. Evid. R. 404(2).

██ In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under such rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Wood*, 245 Neb. 63, 511 N.W.2d 90 (1994); *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993). It is within the trial court's discretion to determine the admissibility of evidence of other wrongs or acts, and the trial court's decision will not be reversed absent an abuse of that discretion. *Wood, supra*; *State v. Bronson*, 242 Neb. 931, 496 N.W.2d 882 (1993).

██ Rule 404(2) "is an inclusionary rule which permits the use of relevant prior bad acts for all purposes except to prove the character of a person in order to show that such person acted in conformity with that character." *Wood*, 245 Neb. at 69, 511 N.W.2d at 95. Accord *State v. Styskal*, 242 Neb. 26, 493 N.W.2d 313 (1992). Under rule 404(2), evidence of other acts is admissible in circumstances such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.

██ An appellate court reviews the admission of evidence of other acts by considering (1) whether the evidence was relevant; (2) whether the evidence had a proper purpose; (3) whether the probative value of the evidence outweighed its potential for

unfair prejudice; and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted. *Wood, supra*; *State v. Martin*, 242 Neb. 116, 493 N.W.2d 191 (1992).

With regard to the relevancy of the evidence, Neb. Evid. R. 401 states that relevant evidence means any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. "To be relevant, evidence must be rationally related to the issue by a likelihood, not a mere possibility, of proving or disproving the issue to be decided." *Wood*, 245 Neb. at 70, 511 N.W.2d at 96.

Officer Apodaca's testimony was relevant and proper to establish that defendant had a common plan or scheme of using a false identity. The real estate agents testified that defendant had given them a false name when they showed him the Rohrses' home. This evidence was also admitted for a proper purpose, that is, to prove a common plan or scheme.

We also find that the probative value of Officer Apodaca's testimony was not outweighed by the potential for unfair prejudice. With regard to the fourth part of the admissibility test, the record does not contain a request from defendant to instruct the jury to consider the evidence only for the limited purpose for which it was admitted.

We find that the trial court did not abuse its discretion in admitting Officer Apodaca's testimony regarding the credit cards found in defendant's hotel room. Accordingly, we find no merit to this assigned error.

*Sufficiency of Evidence.*

In determining whether evidence is sufficient to sustain a conviction in a jury trial, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented to the jury, which are within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed in a light most favorable to the State, is sufficient to support that verdict. Moreover, on such a claim, an appellate court will not set aside a guilty verdict in a criminal

case where such verdict is supported by relevant evidence. Only where the evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by the evidence beyond a reasonable doubt. *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993); *State v. Connely*, 243 Neb. 319, 499 N.W.2d 65 (1993).

The evidence, when viewed in a light most favorable to the State, establishes that on April 9, 1992, defendant committed the crime of theft by unlawful taking, with the property taken being valued at $9,678. The evidence also establishes that defendant is a habitual criminal as defined in § 29-2221. Accordingly, we find this assigned error to be without merit.

*Motion for New Trial.*

■ In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Richter*, 240 Neb. 913, 485 N.W.2d 201 (1992).

Defendant claims that he should have been granted a new trial due to irregularities he experienced in the trial proceedings and due to newly discovered evidence. See Neb. Rev. Stat. § 29-2101 (Reissue 1989). With regard to his claim of irregularities in the proceedings, defendant merely reasserts that he had difficulties with regard to library usage, access to law books, and access to a telephone. Those issues were addressed above, and we determined that the claims lacked merit. We therefore will not reanalyze them here, as we conclude that these claims are equally meritless for purposes of this assigned error.

Defendant's claim of newly discovered evidence consists of Engebretson's testimony at the motion for new trial, wherein she stated that she alone took the jewelry from the Rohrses' residence and that defendant had no knowledge of the theft. The trial judge found that Engebretson's testimony lacked credibility.

■ Where a motion for new trial is based on newly discovered evidence, the rule is well established that the newly discovered evidence must be of such a nature that if offered and

admitted at the former trial, it probably would have produced a substantial difference in the result. *State v. Ferris*, 216 Neb. 606, 344 N.W.2d 668 (1984). Because Engebretson's testimony was found to lack credibility, it cannot be said that it would have produced a substantial difference in the result had it been offered and admitted at trial. We find no merit to defendant's claim that the trial court erred in failing to grant his motion for new trial.

## CONCLUSION

Having found all of defendant's assigned errors lacking in merit, we affirm the disposition of the court below in all respects.

AFFIRMED.